**The PEOPLE of the State of Colorado,**
**Petitioner–Appellee,**

**In the Interest of A.E., a Child,**

**and Concerning**

**S.E., Respondent–Appellant.**

**No. 98CA2564.**

Colorado Court of Appeals,
Div. A.

Nov. 12, 1999.

Rehearing Denied Dec. 16, 1999*.

Certiorari Denied Feb. 22, 2000.

Maurice Lyle Dechant, Mesa County Attorney, Mark R. Hand, Assistant County Attorney, Grand Junction, Colorado, for Petitioner–Appellee.

Vicki A. Alsin, Guardian Ad Litem.

Rennard E. Hailey, Grand Junction, Colorado, for Respondent–Appellant.

Opinion by Judge KAPELKE.

In this dependency and neglect proceeding, S.E. (mother) appeals from a judgment

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1998..

* Taubman, J., would GRANT.

terminating the parent-child legal relationship between her and her child, A.E. We issued an order directing mother to show cause why the appeal should not be dismissed for lack of jurisdiction based on the untimely filing of the notice of appeal. Having considered the responses, we now dismiss the appeal.

On August 28, 1998, the trial court entered an order terminating mother's parental rights regarding A.E. Later, on November 10, 1998, the court entered an order terminating the father's parental rights. Mother filed her notice of appeal on December 24, 1998, which was more than 45 days after the order terminating her rights, but within 45 days of that terminating father's rights.

In response to the show cause order, mother contends that, because she had filed her notice of appeal within 45 days of the order adjudicating father's rights, her appeal was timely. We disagree.

Section 19–1–109(2)(b), C.R.S.1999, which was enacted in 1997, provides that:

An order terminating or refusing to terminate the legal relationship between a parent or parents and one or more of the children of such parent or parents on a petition, or between a child and one or both parents of the child, *shall be a final and appealable order.* (emphasis supplied)

■ When construing a statute, a court must give effect to the intent of the General Assembly and adopt the construction that best effectuates the purpose of the statutory scheme. *M.S. v. People,* 812 P.2d 632 (Colo. 1991). To determine intent, a court should look first to the language of the statute and give the words their ordinary meaning. *People in Interest of G.W.R.,* 943 P.2d 466 (Colo. App.1997).

Under the plain meaning of its language, § 19–1–109(2)(b) expressly renders an order terminating the parent and child relationship immediately "final and appealable," even where such order relates to only one of the parents.

The 1997 amendment of the statute effected a change from the rule that formerly applied. *See D.H. v. People,* 192 Colo. 542, 561 P.2d 5 (1977). Previously, a parent could appeal a judgment terminating the parent-child relationship only after the trial court had entered a ruling that determined the rights of all the parties and concluded the juvenile action. A parent could, however, appeal a judgment terminating his or her parental rights, but not those of the other parent, by obtaining a proper certification from the juvenile court pursuant to C.R.C.P. 54(b). *See Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982) (stating general rule that a judgment which does not resolve all claims against all parties in a case involving multiple claims or multiple parties, and which would otherwise not be a final, appealable judgment, may be certified for appellate review pursuant to C.R.C.P. 54(b)).

■ Under the statute, as amended, mother does have a right to an immediate appeal of the termination order. The issue, however, is whether she was required to exercise that right under § 19–1–109(2)(b) within 45 days of entry of the order or whether she had the option of waiting until the trial court entered the judgment terminating father's parental rights. We conclude that, because the August 1998 judgment terminating her rights was, by the terms of the statute, "final and appealable," she had to file her notice within 45 days of its entry. In so ruling, we reject mother's contention that the right to immediate appeal provided in § 19–1–109(2)(b) is optional.

■ Our conclusion flows from the following principles: First, appeals lie from any final judgment entered by a juvenile court, *People in Interest of E.A.,* 638 P.2d 278 (Colo.1981); C.A.R. 1(a)(1); second, the General Assembly has made an order terminating parental rights as to any parent a "final and appealable" order, § 19–1–109(2)(b); and third, in any civil case in which "an appeal is permitted by law as of right from a trial court to the appellate court," the notice of appeal must be filed within 45 days of the date of the judgment or order from which the party is appealing, C.A.R. 4(a).

■ The timely filing of a notice of appeal within the 45–day period is a jurisdictional requirement, and a failure to comply with that requirement mandates dismissal of the

appeal. *Meredith v. Zavaras,* 954 P.2d 597 (Colo.1998); *Broderick v. McElroy & McCoy, Inc.,* 961 P.2d 504 (Colo.App.1997).

We are aware that in *Walton v. State,* 968 P.2d 636 (Colo.1998), the supreme court construed § 24–10–108, C.R.S.1999, as giving a party desiring to challenge a trial court's determination on the jurisdictional issue of governmental immunity the option of either filing an appeal immediately or waiting to do so until judgment has been entered on the merits following trial. The court concluded in *Walton* that the General Assembly's use of the language "final judgment" in the statute did not create a requirement that the party had to pursue an immediate appeal of the immunity issue. As the court noted, § 24–10–108, makes a decision on a motion addressing the governmental immunity issue "a final judgment" which "shall be subject to interlocutory appeal."

In arriving at its conclusion, the *Walton* court emphasized the General Assembly's recognition that such an appeal is interlocutory: "Significantly, the legislature provided that the trial court's [governmental immunity] ruling is 'subject to interlocutory appeal. . . .'" 968 P.2d at 641. Unlike the governmental immunity statute interpreted in *Walton,* however, the provision at issue here, § 19–1–109(2), does not describe an order or judgment terminating the parent-child relationship as one that is "interlocutory." Such an order is simply made "final and appealable." Accordingly, in our view the intent of the General Assembly is to require immediate appeal of any order terminating parental rights.

Our interpretation is also consistent with the goal of achieving prompt resolution of such critical termination issues in the best interests of the child.

Because the trial court's ruling terminating S.E.'s parental relationship with A.E. was, by statute, a final and appealable order from which she was permitted by law to appeal, and because she failed to file a notice of appeal from that ruling within the required 45–day period, S.E.'s appeal is untimely and this court lacks jurisdiction to entertain it.

The appeal is therefore dismissed.

Judge NEY concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

The dispositive issue here is whether a judgment terminating the parental rights of only one parent in a dependency and neglect proceeding must be appealed by that parent within 45 days of its entry or whether such parent can wait to file an appeal until after the trial court enters a judgment concerning the other parent's parental rights. Because I disagree with the majority's conclusion that S.E., the mother here, was required to file her appeal within 45 days of entry of the judgment terminating her parental rights, I respectfully dissent.

As the majority notes, the trial court entered a judgment terminating mother's parental rights on August 28, 1998. The trial court entered a judgment terminating the father's parental rights on November 10, 1998. Mother filed her notice of appeal within 45 days of that judgment, on December 24, 1998. Because she did not file her notice of appeal within 45 days of August 28, 1998, the majority concludes that mother's appeal was untimely, and that we are without jurisdiction to consider her appeal challenging the termination of her parental rights.

We are called upon here to analyze § 19–1–109(2)(b), C.R.S.1999. That statute provides:

An order terminating or refusing to terminate the legal relationship between a parent or parents and one or more of the children of such parent or parents on a petition, or between a child and one or both parents of the child, shall be a final and appealable order.

To determine the meaning of this statute, we must ascertain the intent of the General Assembly, and in so doing, we must accord words and phrases their plain and obvious meaning. *Culver v. Ace Electric,* 971 P.2d 641 (Colo.1999). However, if an ambiguity exists, a court may consider statutes concerning the same or similar subjects and the consequences of a particular construction in order to determine legislative intent. *See*

§§ 2–4–203(1)(a), (d), and (e), C.R.S.1999. In interpreting a statute we must also presume that the General Assembly intended a just and reasonable result, and we must seek to avoid interpretations leading to absurd results. *People in Interest of J.L.R.*, 895 P.2d 1151 (Colo.App.1995).

In my view, application of these principles of statutory construction leads to the conclusion that § 19–1–109(2)(b) is ambiguous. As the majority clearly articulates, the statute may be interpreted to require an immediate appeal after an order terminating the parental rights of one parent. On the other hand, a number of factors, discussed below, lead to the conclusion that this statute may be interpreted such that, after entry of an order terminating the parental rights of one parent, the filing of a notice of appeal is optional. Consideration of these factors leads me to the conclusion that this latter interpretation is correct.

First, one factor militating in favor of the conclusion that appeals from orders terminating the rights of one parent are optional stems from the 1997 amendment to § 19–1–109, C.R.S., which specifies that an order terminating the parental rights of one parent "shall be a final and appealable order." According to two commentators, "[t]he amendment eliminates the previous requirement that issues of all parties in the proceeding be resolved, which historically has been an obstacle in dependency and neglect cases." *See* S. Rothenberg and A. Gill, *Appealable Orders in Family Law*, 26 Colo. Law. 43, 44 (December 1997). Thus, the statute eliminated the previous procedural requirement of filing a motion pursuant to C.R.C.P. 54(b) to obtain permission from the trial court to appeal an order terminating the parental rights of one parent. The thrust of this amendment was to make what had previously been an interlocutory order an order that is now final and appealable. There is no indication in the statute that the General Assembly intended to require that one parent whose rights are terminated must appeal immediately after that order terminating his or her parental rights.

Second, the view that the General Assembly intended an appeal in circumstances such as those here to be optional is consistent with a growing body of law in which the supreme court has held that certain orders may be both interlocutory and final for purposes of appeal.

For example, in *Walton v. State*, 968 P.2d 636 (Colo.1998), the supreme court held that the General Assembly, by its use of the phrase "final judgment," did not intend to require immediate appeals of jurisdictional rulings under the Colorado Governmental Immunity Act, § 24–10–101, et seq., C.R.S. 1999. Instead, the supreme court determined that the General Assembly intended to provide a public entity with the option of taking an interlocutory appeal.

I disagree with the majority's conclusion that *Walton* is inapplicable here because the General Assembly used the word "interlocutory" in the Governmental Immunity Act. Here, as noted, the very change effected by the General Assembly was to make what had previously been an interlocutory order one that is final and appealable. In the context of a dependency and neglect proceeding, an order terminating the parental rights of one parent is still interlocutory because the dependency and neglect proceeding is not concluded until there is a final dismissal or termination of the parental rights of the other parent.

In other circumstances, the supreme court has recognized that interlocutory orders may be deemed final for purposes of appeal. *See People v. Gallegos*, 946 P.2d 946 (Colo.1997) (interlocutory orders within the meaning of the speedy trial statute); *Furlong v. Gardner*, 956 P.2d 545 (Colo.1998) (denial of summary judgment on basis of qualified immunity in § 1983 action is immediately appealable if based on question of law); *City of Lakewood v. Brace*, 919 P.2d 231 (Colo.1996) (same; also, under Governmental Immunity Act, public employee and city may bring interlocutory appeal following denial of summary judgment motion on basis of sovereign immunity).

Third, the plain language of the statute makes an appeal optional. In construing a statute, "the" particularizes the subject it precedes, and is a word of limitation as op-

posed to the indefinite and generalizing nature of "a" or "an". *Brooks v. Zabka,* 168 Colo. 265, 450 P.2d 653 (1969).

Here, the statute states that an order terminating or refusing to terminate parental rights "shall be *a* final and appealable order." Section 19–1–109(2)(b) (emphasis added). By using the word "a" instead of "the," the General Assembly gave parents the option of appealing the determination of their parental rights either after a determination of one parent's rights, or after a determination of both parents' rights, thus making it easier for parents to protect their constitutionally protected liberty interests. Construing this statutory language as mandatory would make the enforcement of such interests more difficult.

Fourth, examining the consequences of the alternative statutory construction, I conclude that there are practical reasons for determining that the filing of mother's appeal here is optional. In some situations, it would be desirable to permit one parent to file an appeal immediately. In circumstances where one parent's rights are terminated before those of the other parent, and that parent believes that the trial court erred, that parent has an interest in filing an immediate appeal in order to obtain a prompt appellate determination as to whether the termination of parental rights was wrongful.

However, if the statute is interpreted to *require* an immediate appeal, some parents, such as mother here, will be precluded from appealing a termination of their parental rights. While in other contexts it may be satisfactory to conclude that the General Assembly intended an immediate appeal of a particular trial court ruling, I am hesitant to conclude that such was the General Assembly's intent, particularly when an order terminating the parent-child legal relationship is a drastic remedy which affects a parent's fundamental liberty interest. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982).

Fifth, given the increasing emphasis in recent years on prompt conclusion of dependency and neglect proceedings, there is increasingly less likelihood that one parent's rights will be terminated years before an order terminating the parental rights of the other parent. *See* § 19–3–702(1), C.R.S.1999 (trial court must conduct permanency planning hearing as soon as possible following dispositional hearing but, in any event, within twelve months of placement in foster home; three month period applies to children under six in expedited permanency planning counties); § 19–1–109(3), C.R.S.1999 ("Child Welfare Appeals Workgroup" created to submit written report to General Assembly to consider necessary statutory or other changes to ensure that appeals in dependency and neglect cases be resolved within six months after being filed).

Sixth, the 1997 amendments to § 19–1–109 also allow parents to appeal from an order either "terminating or *refusing* to terminate the legal relationship between a parent or parents and one or more of the children of such parent or parents . . . ." (emphasis added). This amendment legislatively overruled *People in Interest of D.B.,* 855 P.2d 27 (Colo. App.1993) (holding that an order refusing to terminate parental rights was interlocutory, and therefore not appealable). Because of this amendment, if the court had entered an order refusing to terminate father's rights, mother could have appealed after the entry of such order.

By including as appealable orders those that refuse to terminate parental rights, and in light of the recent focus on expediency, noted above, the statutory scheme ensures that one parent's rights are resolved within a short period of time relative to the other parent's rights. This change further supports the argument that § 19–1–109(2)(b) gives a parent, whose rights have been terminated, the option of waiting to file an appeal until after the rights of the other parent have been resolved by the court.

Here, of course, father's rights were terminated only two and one-half months after mother's rights, so it is difficult to imagine any prejudice that would accrue to either party as a result of construing the statute to provide for an optional filing of the appeal after termination of mother's parental rights.

Finally, there is no compelling reason to construe § 19–1–109(2)(b) to require an immediate appeal upon the termination of one parent's parental rights because the child or children of such parent may not be made available for adoption until the rights of the other parent have also been terminated. *See* § 19–5–210(6), C.R.S.1999.

Accordingly, I conclude that the General Assembly intended that § 19–1–109(2)(b) does not require an immediate appeal from a judgment terminating one parent's rights, but rather, that such parent be permitted to file an appeal either after such judgment or after entry of a judgment either terminating or refusing to terminate the other parent's rights. To hold otherwise here would deny mother any appellate review of her constitutionally protected liberty interest in the care, control, and management of her child. *See Santosky v. Kramer, supra.*