148 P.3d 450 (2006)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of T.L.B., a Child,
and Concerning K.N.B., Respondent-Appellant.
No. 05CA2664.
Colorado Court of Appeals, Div. I.
October 19, 2006.
*452 David Baumgarten, County Attorney, Thomas A. Dill, Deputy County Attorney, Gunnison, Colorado, for Petitioner-Appellee.
Andrew Allen, Guardian Ad Litem.
Peter Bogardus, P.C., Peter Bogardus, Crested Butte, Colorado, for Respondent-Appellant.
Opinion by Judge MÁRQUEZ.
K.N.B. (father) appeals from the judgment terminating his parent-child legal relationship with his daughter, T.L.B. We affirm.
Five-year-old T.L.B., who is speech impaired and developmentally disabled, was removed from parental custody by the Gunnison County Department of Human Services (the department) in January 2005 because father had been arrested. His home was filthy with dog and bird feces and posed a danger to the child because there were drug paraphernalia, weapons, pornography, and flammable material within the child's reach.
After father admitted to the allegations in the petition in February 2005, the court ordered the department to prepare a proposed treatment plan. Two weeks later, by agreement of the parties, the department sought an extension of time to file a treatment plan because father was in the state hospital for a mental health evaluation. On May 6, 2005, the department filed a proposed treatment plan. However, on May 13, 2005, father was sentenced to eight years in prison for distribution of methamphetamine. He was also sentenced to 107 days for child abuse.
The next month, the department filed a motion to terminate father's parental rights, asserting the criteria for termination under § 19-3-604, C.R.S.2006, were satisfied because "no further appropriate treatment plan" could be devised to address his unfitness. The department asserted father's unfitness was based in part on his mental health that rendered him unlikely to be able *453 to provide ongoing care for T.L.B. within a reasonable time.
Later that month, T.L.B.'s guardian ad litem (GAL) filed a response agreeing with the department's motion to terminate father's parental rights, but also asserting that parental rights should be terminated pursuant to § 19-3-604(1)(b)(III), C.R.S.2006, because father would not be eligible for parole within thirty-six months from the date the child was adjudicated dependent and neglected.
That same month, the court accepted the admission of T.L.B.'s mother to the allegations in the petition. The court ordered the department to submit a proposed treatment plan for her. The following week, father filed a response to the motion to terminate, asserting the department had never attempted to implement a treatment plan in his case and accepting responsibility for his criminal behavior.
Two months later, the department filed its proposed treatment plan for mother. On September 14, 2005, the court entered an order adjudicating T.L.B. to be dependent and neglected as to each parent on the dates of their respective admissions and an order adopting a recommended treatment plan.
Father's termination hearing began twelve days later and was continued to allow presentation of evidence of father's sentence reconsideration and testimony of a witness from the Department of Corrections. In October, the court terminated father's parental rights.
Father's trial counsel did not file a notice of appeal and left the area "almost immediately" after the termination hearing. It is not clear when the trial court learned of her departure, but it appointed appellate counsel the day before the notice of appeal was due on "very short notice." That day, appellate counsel sought the file from trial counsel, but she declined to provide it. Eight days later, appellate counsel sought the file from the court, but did not review it until two weeks later because he went out of town in the interim.
When appellate counsel discovered that no notice of appeal had been filed, he contacted father. He was unable to speak with father for one week because of father's incarceration. Father authorized the filing of the notice of appeal when he spoke with counsel, and counsel placed the notice of appeal in the mail the next day. It was filed on December 14, 2005.

I.
This court issued an order to show cause as to why the appeal should not be dismissed for failure to file a timely notice of appeal. Having reviewed father's response, we conclude he established good cause for not filing a timely notice of appeal, and we discharge the order to show cause.
Because the termination of parental rights affects the parent's fundamental liberty interest, the right to appeal that order is of significant import to the parent. C.S. v. People in Interest of I.S., 83 P.3d 627 (Colo. 2004). However, "the state also has a significant interest in finalizing a dependency and neglect proceeding in an expeditious manner to meet the child's emotional and psychological needs for a permanent home." People in Interest of T.D., 140 P.3d 205, 213 (Colo.App. 2006).
To balance these interests, appeals in dependency and neglect cases proceed on an expedited basis, requiring an appellant to file the notice of appeal within twenty-one days from the date of the entry of the order. C.A.R. 3.4(b). Unless a notice of appeal is timely filed, this court lacks jurisdiction to hear the appeal. People in Interest of A.E., 994 P.2d 465 (Colo.App.1999).
In this case, the order terminating parental rights was signed on October 19, 2005; therefore, father's notice of appeal was due to be filed on or before November 9, 2005. However, it was not filed until December 14, 2005.
This court has discretion to accept a late filing of a dependency appeal based on a showing of good cause. People in Interest of A.J., 143 P.3d 1143 (Colo.App.2006). The determination of whether good cause exists depends on the particular facts of the case and should be made after assessing the totality of the circumstances. People v. Baker, *454 104 P.3d 893 (Colo.2005). In deciding whether to exercise our discretion to grant a good cause extension for filing a notice of appeal in a dependency and neglect case, we must balance the parent's interest in appealing a termination order against the child's need for finality in the proceedings. We determine whether a parent has established good cause on a case-by-case basis, and we grant an extension only in exceptional cases. People in Interest of A.J., supra.
We conclude this case constitutes an exceptional situation justifying our accepting the untimely notice of appeal. Trial counsel left the area "almost immediately" after the termination order was filed. Regardless, she still had the obligation to file a notice of appeal on father's behalf if he asked her to do so, see C.A.R. 3.4(d); People in Interest of A.J., supra, but she did not file one.
This record does not show father was uninterested in appealing the judgment terminating parental rights. He "vigorously" opposed termination of parental rights, indicated he was the only parent the child knew, and was an active participant in the proceedings. Further, he immediately authorized appellate counsel to file the notice.
Appellate counsel ultimately discharged the obligation to file the notice of appeal. Counsel attempted to obtain the file from trial counsel, but that request was refused. While we do not condone appellate counsel's conduct in waiting two weeks to review the file, under the circumstances here, we will not allow counsel's delay to prejudice father. Once counsel reviewed the file and learned that no notice of appeal had been filed, he acted as promptly as possible, considering father's incarceration, to obtain his authorization to file the notice of appeal. Once father authorized him to file the notice, counsel placed it in the mail the next day. Under these limited circumstances, father should not lose his right to appeal, and we determine there is good cause for extending the filing deadline. See People in Interest of A.J., supra. Consequently, we discharge the order to show cause and allow the filing of the untimely notice of appeal.

II.
Father asserts the order terminating his parental rights should be reversed because no dispositional hearing was held. We disagree.

A.
We first reject father's argument that reversal is warranted because the dispositional hearing was not held within thirty days of the adjudication.
After a child has been adjudicated to be dependent or neglected, the court must enter a dispositional decree. Section 19-3-508(1), C.R.S.2006. The court has several dispositional options, one of which is the termination of parental rights. Section 19-3-508(1)(a)(e), C.R.S.2006.
If the proposed disposition is not termination, the court may enter the dispositional decree the same day it holds the adjudication hearing; otherwise, for children under the age of six, such as T.L.B., it must enter the decree within thirty days, unless good cause is shown and it finds the best interests of the child will be served by granting the delay. Section 19-3-508(1).
However, when the proposed disposition is termination,
the hearing on termination shall not be held on the same date as the adjudication, and the time limits set forth above for dispositional hearings shall not apply. When the proposed disposition is termination of the parent-child legal relationship, the court may continue the dispositional hearing to the earliest available date for a hearing in accordance with the provisions of paragraph (a) of subsection (3) of this section and part 6 of this article.
Section 19-3-508(1). Thus, the court need not hold that hearing within thirty days of the adjudicatory hearing. In any event, the time periods to hold the dispositional hearing are not jurisdictional. People in Interest of D.R.W., 91 P.3d 453 (Colo.App.2004). Consequently, father incorrectly asserts that reversal is warranted because the dispositional hearing was not held within thirty days.

*455 B.
Contrary to father's further argument, we conclude the court was not required to hold a dispositional hearing separate from the termination hearing.
Initially, we note that the department's assertion, that father received a separate dispositional hearing, is not clearly supported by the record.
The record reflects that the court adopted a treatment plan, but it did so shortly after the department filed a proposed treatment plan for mother and after it entered a minute order indicating mother's treatment plan would be approved. Also, it adopted the treatment plan after it received the motion to terminate father's parental rights because no treatment plan could be adopted and after it scheduled a hearing on that motion. The court adopted the treatment plan only twelve days before the termination hearing. Under these circumstances, it is not clear whether the court adopted father's treatment plan.
We recognize that there was testimony offered at trial about father's treatment plan and his compliance or lack thereof with that plan. We presume this testimony was introduced because the department was attempting to prove termination was appropriate under § 19-3-604(1)(c) in addition to § 19-3-604(1)(b). The department may pursue termination under both and may also initially recommend a treatment plan and subsequently conclude that no treatment plan is appropriate. See People in Interest of D.C.-M.S., 111 P.3d 559 (Colo.App.2005).
Here, the record does not reflect that the court held a separate dispositional hearing to address whether there was an appropriate treatment plan for father before it conducted the termination of parental rights hearing. However, there is no indication in the record that father objected to the lack of a separate dispositional hearing. The issue therefore, is whether, as father argues, the court had to hold two hearings or, as the department and the GAL argue, the contemporaneous dispositional and termination hearing constituted substantial compliance with the statutory scheme. We conclude the court here did not err by holding a contemporaneous dispositional and termination hearing.
Substantial compliance with the dependency or neglect statutes gives rise to a presumption of no prejudice to a parent in a termination hearing. C.S. v. People, supra As a matter of due process, the state must provide fundamentally fair procedures when termination of parental rights is sought. People in Interest of A.M.D., 648 P.2d 625 (Colo.1982). Thus, a parent must be given notice and an opportunity to be heard and to defend. People in Interest of M.M., 726 P.2d 1108 (Colo.1986). The legislative declaration to part 3 of Title 19 describes "the health and safety of the child" as "the paramount concern" in making reasonable efforts to unify the family. Section 19-3-100.5(2), C.R.S. 2006; see People in Interest of D.R.W., supra.
Here, the court made extensive factual findings and conclusions of law. It found that the child, at the time of removal from the home, was under the age of six and that the child was developmentally delayed, particularly in speech language skills. The court noted that the department had received three reports with respect to concerns about the child's living situation. It found that father had pleaded guilty to possession with the intent to distribute methamphetamine and child abuse and that at the time of his arrest,
[The home was described as] filthy, including dog and bird feces throughout the house, methamphetamines being sold in the house, weapons and surveillance cameras were in the house and pornography was on a computer screen at the time of the arrest. Further, there were broken windows in the child's bedroom and also in the basement.
The court reviewed testimony that father had a twenty-year history of drug usage and would require nine months to one year of inpatient treatment after incarceration. The court noted that father had admitted to having been under the influence of drugs while functioning as the primary care provider for the child and other children. It found that father had been sentenced to an eight-year term and his current projected parole eligibility *456 date was in 2009. The court specifically found that "in light of the special needs of this child, the age of the child, the long-term incarceration of [father]," and other factors, termination of his parental rights was in T.L.B.'s best interests. The court also found that "no treatment plan can be devised in a reasonable time, that father is unfit and that his condition is unlikely to change in a reasonable time."
These findings and conclusions show that the court terminated parental rights under § 19-3-604(1)(b)(III). Section 19-3-604(1) provides as follows:
The court may order a termination of the parent-child legal relationship upon the finding by clear and convincing evidence of any one of the following:
. . .
(b) That the child is adjudicated dependent or neglected and the court finds that no appropriate treatment plan can be devised to address the unfitness of the parent or parents. In making such a determination, the court shall find one of the following as the basis for unfitness:
. . .
(III) . . . [I]f the child is under six years of age at the time a petition is filed . . . the long-term confinement of the parent of such duration that the parent is not eligible for parole for at least thirty-six months after the date the child was adjudicated dependent or neglected and the court has found by clear and convincing evidence that no appropriate treatment plan can be devised to address the unfitness of the parent or parents.
Here, the court referred to this subsection in a citation to People in Interest of T.T., 845 P.2d 539, 541 (Colo.App.1992). The court concluded that the analysis of People in Interest of T.T. applied here as well. It found that no treatment plan could be devised in a reasonable time, and father would not be eligible for parole until March 2009 (which was greater than thirty-six months after the date the child was adjudicated dependent and neglected). The record reflects that the child was under age six at the time the petition was filed.
This is the identical analysis the court would have conducted had it held a separate dispositional hearing to determine whether no treatment plan was appropriate pursuant to § 19-3-508(1)(e)(I), C.R.S.2006, because under the facts presented here, that section requires an analysis of the factors in § 193604(1)(b). See In Interest of K.D., 139 P.3d 695 (Colo.2006)(under the circumstances described in § 19-3-508(1)(e)(I), a court may terminate the parent-child relationship without devising a treatment plan). Here, the court's conducting a single hearing did not affect father's due process rights because he had a full evidentiary hearing on the issue of whether the proposed disposition of termination was appropriate. See People in Interest of M.B., 70 P.3d 618 (Colo.App.2003) (no due process violation occurred when court did not hold permanency hearing before the permanent plan was changed to termination because the court allowed the parent to address any issues regarding the change to the permanent plan at the termination hearing).
Father relies on People in Interest of D.R.W., supra, for the proposition that a separate dispositional hearing had to be held before the court terminated parental rights. That case is distinguishable. The crux of that decision was the significant passage of time of over eighteen months from the deferred adjudication to the termination of parental rights, during which time the father had been, in essence, misled into believing he could reunify with the child and that termination was not at issue. Further, the trial court found the father might have been able to care for the child had he received one to two years of intensive therapy. The division concluded that had such therapy been included in the treatment plan and made available to the father, the outcome could have been different because so much time had passed between the deferred adjudication and the termination hearing. Moreover, in D.R.W. it appears the father was already on parole, as he was scheduled to be released from a halfway house within weeks following the termination hearing.
The same issues of passage of time and misleading actions are not present here. The adjudication occurred in February 2005; *457 the motion to terminate was filed in June 2005; and the termination of parental rights occurred in October 2005. The court did not find that father might have reunified with T.L.B. had he been given the opportunity. Further, unlike in D.R.W., here father was serving an eight-year term and would not be eligible for parole within thirty-six months from the date the child was adjudicated dependent and neglected. Thus, the unique factual scenario in People in Interest of D.R.W., supra, is not present here.
In sum, the statutory scheme allows for a disposition of termination. Section 19-3-508(1). Father received a hearing and an opportunity to litigate the issue as to whether no treatment plan could be devised for him because of his unfitness. Therefore, the proceedings were in substantial compliance with the statutory scheme. See C.S. v. People, supra That the court held a contemporaneous dispositional and termination hearing is not error.

III.
Father asserts the judgment should be reversed because the trial court's findings did not meet the criteria for termination set forth in § 19-3-604(1)(a), (b), or (c), C.R.S. 2006. We disagree.
Section 19-3-604(1)(b), provides that a court may terminate parental rights if the child has been adjudicated dependent or neglected and the court finds that no appropriate treatment plan can be devised to address the unfitness of the parent. The court may find a parent is unfit if he or she is in long-term confinement and is not eligible for parole for at least thirty-six months after a child less than six years old was adjudicated dependent or neglected. Section 19-3-604(1)(b)(III); In Interest of K.D., supra.
Here, the trial court's factual findings refer to the statutory criteria for unfitness in § 19-3-604(1)(b) and (c).
The findings supporting an order terminating the parent-child legal relationship are adequate as long as they conform to the criteria set forth in § 19-3-604. People in Interest of A.G.-G., 899 P.2d 319 (Colo. App.1995). To be adequate, a trial court's findings must sufficiently address and resolve each specific requirement for termination. People in Interest of M.C.C., 641 P.2d 306 (Colo.App.1982). We set aside an order only when the court's findings do not conform to statutory criteria and we cannot determine the basis for the court's order of termination. See People in Interest of J.M.B., 60 P.3d 790 (Colo.App.2002).
In this case, it is apparent that the court terminated parental rights under § 19-3-604(1)(b)(III).
As noted above, the trial court, based on record support, made extensive factual findings. The case management supervisor at father's correctional facility testified father was sentenced to eight years in prison. His presumptive parole eligibility date was March 2009. Father admitted the allegations in the petition in February 2005. Thirty-six months from that date is February 2008. Thus, the evidence supports the court's finding that father would not be eligible for parole until March 2009.
The child welfare manager at the department testified that it would be "impossible" to come up with a treatment plan that father could successfully complete while incarcerated because of the length of time in prison and his past history. Thus, the evidence supported the finding that no treatment plan could be devised.
Father argues that because an administrative review showed T.L.B.'s permanency goal was to return home and referred to compliance with the treatment plan, a treatment plan had to have been adopted for him. Therefore, he argues, termination of his parental rights could not occur under § 19-3-604(1)(b), because that type of termination necessarily includes a finding that no treatment plan may be approved. We disagree.
The report also refers to the motion to terminate father's parental rights, and it is undisputed that father was sentenced to a term of eight years. The trial court also found that father was not eligible for parole until March 2009, which is more than thirty-six months after the date the child was adjudicated dependent and neglected.
*458 The court's findings that father was unfit based on his incarceration and that no treatment plan could be developed for him were supported by the evidence and will not be disturbed on appeal. See People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).
Because we conclude that the trial court's findings met the criteria for termination in § 19-3-604(1)(b)(III), we need not address father's arguments that the trial court's findings did not meet the criteria for termination under § 19-3-604(1)(a) or (c). See People in Interest of D.C-M.S., supra. Moreover, because no treatment plan is necessary to terminate parental rights under § 19-3-604(1)(b), we need not address father's argument that the treatment plan was inadequate.
The judgment is affirmed.
Judge GRAHAM and Judge TERRY concur.