24CA0950 Peo in Interest of AW 01-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0950
Pueblo County District Court No. 22JV30248
Honorable William D. Alexander, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.W., J.W., and L.W., Children,

and Concerning E.P.C., J.K., and A.W.,

Appellants.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 9, 2025

---

Cynthia Mitchell, County Attorney, David A. Roth, Special Assistant County Attorney, Pueblo, Colorado, for Appellee

Debra W. Dodd, Counsel for Youth, Berthoud, Colorado, for A.W.

Debra W. Dodd, Guardian Ad Litem, for J.W. and L.W.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant E.P.C

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant J.K.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant A.W.

¶ 1    E.P.C. (mother to L.W.), J.K. (mother to A.W. and J.W.), and A.W. (father to all three children), appeal the judgment terminating their parent-child legal relationships with their respective children. We affirm.

I.    Background

¶ 2    In November 2022, the Pueblo County Department of Human Services (Department) filed a petition in dependency and neglect, alleging, among other things, that the home where the children lived with father and mother E.P.C. was very disheveled, one of the children had lice, the children were often locked in their rooms, and the parents were using substances. The Department could not locate mother J.K. The juvenile court held an adjudicatory hearing, the parents did not appear, and the court adjudicated the children dependent and neglected after a bench trial as to all parents. The court then adopted treatment plans for the parents.

¶ 3    In October 2023, the Department moved to terminate the parents' parental rights under section 19-3-604(1)(c), C.R.S. 2024. But several weeks later, the Department filed an amended motion, asserting that the parents' parental rights should also be terminated pursuant to section 19-3-604(1)(a). The juvenile court

1

held a two-day evidentiary hearing in January 2024, after which it terminated the parents' parental rights under both section 19-3-604(1)(a) and (c).

## II.    Invalid Service of Process

¶ 4    Mother J.K. asserts that the Department did not properly serve her by publication.  As a result, she claims that (1) the juvenile court did not have personal jurisdiction over her and (2) she did not have adequate notice of the proceeding.  Because mother did not timely object to the alleged improper service of process after she became aware of the proceedings, we decline to address the merits of her argument that the juvenile court lacked personal jurisdiction over her.

### A.    Standard of Review and Applicable Law

¶ 5    Whether a claim is waived presents a question of law that we review de novo.  *Richardson v. People*, 2020 CO 46, ¶ 21.

¶ 6    To preserve an issue for appellate review, a party must make a timely objection on the record, *People v. Turner*, 2022 CO 50, ¶ 11, and that objection must be "specific enough to draw the trial court's attention to the asserted error," *People v. Tallent*, 2021 CO 68, ¶ 12 (*quoting Martinez v. People*, 2015 CO 16, ¶ 14).  Although we do not

2

require that parties use talismanic language to preserve an argument for appeal, a party must present the court with "an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it." *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004). Consequently, "[m]erely calling an issue or fact to the court's attention, without asking for any relief, is insufficient to preserve an issue for review." *Forgette v. People*, 2023 CO 4, ¶ 23.

¶ 7 Waiver is "the intentional relinquishment of a known right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (*quoting Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). "A waiver may be explicit, as, for example, when a party expressly abandons an existing right or privilege, or it may be implied, as when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Forgette*, ¶ 28. A waiver "extinguishes error, and therefore appellate review." *Rediger*, ¶ 40; *see also In Interest of L.B.*, 2017 COA 5, ¶ 51 ("A waiver occurs when a party removes an issue from the court's consideration.").

¶ 8 "[D]ependency and neglect proceedings are subject to the limitation that except where jurisdiction is implicated, generally

3

appellate courts review only issues presented to and ruled on by the lower court." *People in Interest of M.B.*, 2020 COA 13, ¶ 14; *but see People in Interest of T.W.*, 2022 COA 88M, ¶ 51 (noting that appellate courts may exercise their discretion to address an unpreserved error in a dependency and neglect case). But a party may impliedly waive a challenge to personal jurisdiction based on invalid service if she fails to timely assert it. *Garcia v. Puerto Vallarta Sports Bar, LLC*, 2022 COA 17, ¶ 26; *see also Meggit v. Stross*, 2021 COA 50, ¶ 44. For example, "a party may waive a challenge . . . by having actual notice of the case but waiting until after judgment is entered to challenge jurisdiction." *Garcia*, ¶ 28.

¶ 9 "[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved and what standard of review should apply, regardless of the positions taken by the parties." *Tallent*, ¶ 11.

### B. Analysis

¶ 10 In dependency and neglect proceedings, C.R.J.P. 2.2(b)(1) requires the petitioning party to serve the parent with the summons and petition in the manner described in 19-3-503, C.R.S. 2024. As relevant here, section 19-3-503(8) states that, when a parent

4

"cannot be found within the state," the child's presence in Colorado confers jurisdiction on the juvenile court "if due notice has been given." In turn, due notice can be achieved through service by publication pursuant to C.R.C.P. 4(g). § 19-3-503(8)(a).

¶ 11 Under C.R.C.P. 4(g), a party must file a verified motion stating (1) "the facts authorizing such service"; (2) "the efforts, if any, that have been made to obtain personal service"; and (3) the "address, or last known address" of the person or that the address or last known address are unknown. After reviewing the verified motion, if the juvenile court determines that "due diligence has been used to obtain personal service or that efforts to obtain the same would have been to no avail," it may order service by publication. C.R.C.P. 4(g)(2).

¶ 12 In this case, the Department moved for service by publication, asserting that mother J.K. could not be found in Colorado and her place of residence was unknown. The Department attached an affidavit from the caseworker, in which the caseworker averred that she had attempted to locate mother through various avenues without any success. She also attested that mother's address or last known address were unknown. The juvenile court granted the

5

Department's request to serve mother by publication, and the Department published notice of the proceeding in a Pueblo newspaper.

¶ 13    Mother did not appear during the pendency of the case, nor did she attend the evidentiary portions of the termination hearing. A few days before the matter was set for the juvenile court to announce its oral ruling, however, mother's counsel (who had been provisionally appointed at the beginning of the case and never withdrew) asked the court to delay ruling on mother J.K.'s portion of the case because mother J.K. had recently contacted him after learning about the case while inquiring about her child support case. Mother questioned the validity of the Department's due diligence attempting to locate her and its decision to move for service by publication, but she did not ask the court to set aside the adjudication for lack of service, personal jurisdiction, or notice of the proceeding. *See Forgette*, ¶ 23. Instead, mother J.K. requested that she be allowed additional time to participate in the case and comply with her treatment plan before the court entered judgment.

¶ 14    Mother J.K. appeared for the first time at the subsequent hearing set for the court to issue its oral ruling, and the juvenile

court addressed mother's motion but denied her request to delay its judgment. Nevertheless, the court told counsel that it would give him "a period of time" to "allege that [mother] was never given any notice and had no reason to be aware of these proceedings." The court also agreed to "set that for further hearing afterwards," considering that the Department "probably ha[d] a different point of view." Following its oral ruling, the court directed the Department to file a proposed order and gave the parents five days to object to the proposed order. Ultimately, the court did not enter its final, written judgment for almost two and a half months after its oral ruling. Yet, during that time nor thereafter, mother J.K. did not file a motion to set aside the adjudication judgment or delay entering the termination judgment for lack of service, personal jurisdiction, or notice.

¶ 15 Mother J.K. now asserts that we should set aside the juvenile court's adjudication and termination judgments because the Department did not comply with the requirements of the rules and statutes governing service by publication. Specifically, she argues that the Department knew that mother's last known address was in Colorado Springs and nevertheless failed to (1) search outside of

7

Pueblo or (2) publish the notice in a Colorado Springs newspaper. We decline to address these contentions, however, because mother J.K. impliedly waive her right to challenge lack of service, personal jurisdiction, and notice when she declined the court's offer to address these matters before or even after it entered judgment. *See Garcia*, ¶ 26; *Meggitt*, ¶ 44.

¶ 16   In a dependency and neglect cases, a judgment of adjudication becomes final and appealable upon entry of the initial dispositional order, *see People in Interest of H.T.*, 2019 COA 72, ¶ 16, and a parent has twenty-one days from the entry of that dispositional order to file an appeal of the adjudication, *see* C.A.R. 3.4(b)(1).  A challenge to an adjudication judgment must be raised in a timely appeal from that stage of the dependency and neglect proceeding, and the parent may not wait until the termination judgment is entered to challenge the adjudication judgment.  *See People in Interest of C.B.*, 2019 COA 168, ¶ 18.

¶ 17   Mother J.K. was required to challenge the adjudication in a timely appeal of that order.  To be fair, she could not have satisfied the twenty-one day deadline given she did not know about the proceedings at that time.  But once she had notice of the

proceeding, and to preserve her lack of personal jurisdiction argument, she needed to file a C.R.C.P. 60(b) motion to set aside the adjudication. *See People in Interest of A.E.*, 994 P.2d 465, 467 (Colo. App. 1999); *see also C.B.*, ¶ 22 ("Because [the parent's] challenge to the adjudication is untimely, we cannot consider whether or how a flawed adjudication might have affected the later termination."). Because mother did not timely challenge the adjudication, she cannot attack it now or attempt to undo the termination judgment because adjudication was improper.

¶ 18    And mother J.K"'s reliance on *In re J.N.*, 2022 COA 69, is misplaced. In that case, the parent filed a C.R.C.P. 60(b) motion to set aside the judgment for lack of service, and the juvenile court held an evidentiary hearing on the issue. *J.N.*, ¶¶ 14-16. The division concluded that (1) the Department's motion was facially deficient because it failed to satisfy the statutory requirements and (2) because the motion was facially deficient, the Department had the burden to demonstrate the adequacy of its service. *Id.* at ¶¶ 26, 28. Then, the division determined that the evidence presented at the C.R.C.P. 60(b) hearing did not support the court's findings. *J.N.*, ¶¶ 27-34.

9

¶ 19    In this case, there is no assertion that the Department's motion was facially deficient. We acknowledge mother J.K. claims that the caseworker should have known that mother's last known address was in Colorado Springs, and so service by publication should have been extended to that city as well. But that does not necessarily make the motion facially deficient, as the caseworker attested that she did not know mother's last known address and described her efforts to locate mother. Therefore, unlike in *J.N.*, mother J.K. would have the burden to establish the Department's service by publication was improper service. *See id.* at ¶ 28. And because mother J.K. failed to file a C.R.C.P. 60(b) motion (or otherwise ask for a hearing on this issue), the record is not sufficiently developed to address mother J.K.'s lack of personal jurisdiction argument on the merits. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 21 (noting that an appellate court can't consider an issue in which there isn't a sufficient factual record because appellate courts can't make findings of fact). Therefore, mother J.K.'s failure to ask for an evidentiary hearing or file a C.R.C.P. 60(b) motion after becoming aware of the proceeding waives her challenge to the adjudication, as well her challenge to the

termination order on grounds the Department lacked personal jurisdiction over her.

### III. Termination of Parental Rights

¶ 20　Mother J.K., Mother E.P.C., and father assert that the juvenile court erred by terminating their parental rights. As explained below, because the parents only challenge the termination judgment under one provision of section 19-3-604, we discern no reversible error.

¶ 21　Section 19-3-604 provides three separate bases for termination of parental rights. *People in Interest of L.M.*, 2018 COA 57M, ¶ 19. Two of these grounds, subsections (1)(a) and (1)(c), are pertinent to this appeal. Following an adjudication, a juvenile court may terminate parental rights under these provisions if

- the parent (1) surrendered physical custody of the child for a period of six months or more and (2) did not manifest during such period the firm intention to resume physical custody of the child or make permanent legal arrangement for the care of the child, § 19-3-604(1)(a)(I); or

11

- (1) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (2) the parent is unfit; and (3) the parent's conduct or condition is unlikely to change in a reasonable time, § 19-3-604(1)(c).

¶ 22    Unlike subsection (1)(c), subsection (1)(a) does not require the juvenile court to adopt a treatment plan for a parent, and, as a result, to terminate parental rights under subsection (1)(a), the court does not need to consider whether (1) a parent had a reasonable time to comply with the treatment plan or (2) the department made reasonable efforts to rehabilitate the parent or reunify the family. *People in Interest of S.Z.S.*, 2022 COA 133, ¶¶ 34, 37.  Likewise, subsection (1)(a) does not require the court to decide whether a parent is unfit.  *See K.D. v. People,* 139 P.3d 695, 700 (Colo. 2006) (noting that subsections (1)(b) and (1)(c) "require a determination that the parent is 'unfit'").

¶ 23    A juvenile court may terminate parental rights under one or more of the criteria in section 19-3-604.  *See People in Interest of D.C-M.S.,* 111 P.3d 559, 561 (Colo. App. 2005) ("[I]t would be absurd to construe the statutory language to mean that termination

12

is permitted if one statutory criterion is met but not if more than one is met."). If the termination motion alleges more than one statutory ground, then the parent has adequate notice that issues concerning multiple criteria may be considered during the termination hearing. *Id.*

¶ 24 Recall that the Department initially moved for termination under subsection (1)(c) but later amended its motion to also include subsection (1)(a). At the termination hearing, the Department presented evidence in support of termination under both subsections (1)(a) and (1)(c). Then, the juvenile court made the required findings under both subsections in its oral ruling and written termination order. *See People in Interest of T.L.B.*, 148 P.3d 450, 457 (Colo. App. 2006) (a court's findings are adequate when they "sufficiently address and resolve each specific requirement for termination"). Specifically, as relevant here, the court made findings that mother E.P.C., mother J.K., and father all abandoned their respective children.

¶ 25 On appeal, all parents assert that the Department did not make reasonable efforts to rehabilitate them or reunify them with their respective children. Both mothers also assert that there were

less drastic alternatives to termination. And father asserts that he could become fit within a reasonable period of time. These contentions all relate to termination only under subsection (1)(c). *See S.Z.S.*, ¶¶ 34-37; *L.M.*, ¶ 24 ("When considering termination under section 19-3-604(1)(c), the court must also consider and eliminate less drastic alternatives to termination."); *see also People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986) (describing how the consideration of less drastic alternatives are implicit in the statutory criteria for termination that are currently included in subsection (1)(c)).

¶ 26     In finding that the children had been abandoned by all parents, the juvenile court was not required to consider whether the Department made reasonable efforts as to mother E.P.C., mother J.K., or father. *S.Z.S.*, ¶ 37. Thus, the parents' challenges to the reasonableness of the Department's efforts are not a basis for setting aside the termination judgment under subsection (1)(a).

¶ 27     Similarly, the requirement that a juvenile court consider and eliminate less drastic alternatives to termination arises out of subsection (1)(c), not (1)(a). *See People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 19 (noting that consideration of less drastic

alternatives is implicit in criteria for termination under section 19-3-604(1)(c)); *L.M.*, ¶ 24 ("When considering termination under section 19-3-604(1)(c), the court must also consider and eliminate less drastic alternatives to termination."); *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986) (describing how consideration of less drastic alternatives arises from criteria in subsection (1)(c)).[1]

¶ 28    Likewise, whether a parent can become fit within a reasonable period of time is also implicit in the criteria for termination under

---

[1] Even assuming consideration and elimination of less drastic alternatives was required for termination under section 19-3-604(1)(a), C.R.S. 2024, that requirement was satisfied as to mother E.P.C. and mother J.K.  *See People ex rel. D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004) (noting that the department must evaluate a reasonable number of persons suggested to it as possible placement options).  The record shows that mother E.P.C.'s family friend told the caseworker that she could not serve as a placement and the friend's mother was disqualified because she had a previous dependency and neglect case.  To the extent mother J.K.'s argument for more time to comply with her treatment plan is construed as a less drastic alternative argument, the record supports that mother J.K. had not seen her children in five to seven years, she had parenting time through a domestic relations case that she never exercised, and she was not paying child support. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011) ("In determining whether permanent placement with a relative or other person is a viable less drastic alternative to termination, the court may consider various factors, including whether an ongoing relationship [with the parent] would be beneficial or detrimental to the child.").

section 19-3-604(1)(c). In determining whether a parent can become fit within a reasonable period of time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *S.Z.S.*, ¶ 24.[2]

¶ 29     Except for an undeveloped argument in mother J.K.'s reply brief, the parents do not raise any arguments challenging the juvenile court's judgment under subsection (1)(a). *Id.* at ¶ 30 n.2 (in rejecting the parent's challenges to the department's reasonable efforts and whether he had reasonable time to comply with his treatment plan, the division noted that the parent did not "challenge the sufficiency of the evidence supporting termination under subsection (1)(a)"). And  mother J.K.'s bald assertion that she did not abandon the children because she "wished to

---

[2] Even assuming consideration and determination of whether a parent cannot become fit within a reasonable period of time is required before termination under section 19-3-604(1)(a), the record supports the juvenile court's termination. For example, father did very little to address his substance dependence issues until mere weeks before the hearing. *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (noting that even "increased compliance" over the course of a case may not justify additional time).

16

participate in the case" and "reunify with the children" is unavailing. *See People in Interest of A.D.*, 56 P.3d 1246, 1248 (Colo. App. 2002) ("[P]articipation in the involuntary proceeding does not in and of itself obviate termination on the basis of abandonment."). Regardless, we do not consider undeveloped arguments, *People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004), or arguments raised for the first time in a reply brief, *L.B.*, ¶ 48, and therefore do not address mother J.K.'s contention any further.

¶ 30    Because the parents have not challenged termination under subsection (1)(a), there is no basis for us to reverse the termination order under that subsection, nor do we need to reach the merits of any of the parents' contentions under subsection (1)(c) because the juvenile court only needed to find one of the three bases for termination in section 19-3-604. *See D.C-M.S.*, 111 P.3d at 561. In other words, even if the parents succeeded on their appeals as to subsection (1)(c), the judgment would nevertheless stand under subsection (1)(a).

IV.    Conclusion

¶ 31    The judgment is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.