25CA2043 Peo in Interest of OG 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2043
Jefferson County District Court No. 24JV30220
Honorable Lindsay VanGilder, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of O.G., a Child,

and Concerning S.G.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE ASHBY*
Román, C.J., and Bernard*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Kimberly Sorrells, County Attorney, Sarah Oviatt, Senior Assistant County Attorney, Golden, Colorado for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this dependency and neglect proceeding, S.G. (mother) appeals the judgment terminating her parent-child legal relationship O.G. (the child).  We affirm.

## I.     Background

¶ 2     In September 2024, the Jefferson County Division of Children, Youth, and Families received a report of domestic violence in the parents' home.  The Division sent a caseworker to investigate and, upon seeing the then-five-month-old child, the caseworker became concerned about his weight and appearance.  The child was then taken to the hospital to be evaluated where he was admitted and diagnosed with severe malnourishment and multiple non-accidental bone fractures.

¶ 3     Consequently, the Division filed a petition in dependency and neglect.  The juvenile court granted temporary legal custody of the child to the Division, and the Division placed him with his paternal grandparents.

¶ 4     The next day, mother was arrested and charged with felony child abuse causing serious bodily injury.  The criminal court entered a mandatory protection order prohibiting mother from any

1

contact with the child, and mother was held at the Jefferson County jail pending trial.

¶ 5 Mother admitted the allegations in the petition, and the juvenile court adjudicated the child dependent or neglected. The court then adopted a treatment plan for mother that required her to, in sum, (1) engage in domestic violence treatment; (2) cooperate with the Division by signing releases of information and communicating with the caseworker; (3) attend individual therapy; (4) complete an anger management evaluation and follow its recommendations; (5) demonstrate the ability to meet all of the child's needs; and (6) complete a hands-on parenting class.

¶ 6 Thereafter, mother pled guilty to child abuse resulting in serious bodily injury, and the criminal court sentenced her to seventeen years in the Department of Corrections (DOC). As a result, mother was transferred from jail to a DOC facility.

¶ 7 The Division later moved to terminate mother's legal relationship with the child. After a contested hearing, the juvenile court granted the termination motion.

## II. Discussion

¶ 8    Mother's sole appellate contention is that the juvenile court erred by finding that the Division made reasonable efforts to rehabilitate her and reunite her with the child. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 9    When a juvenile court proceeds to termination under section 19-3-604(1)(c), C.R.S. 2025, it must find, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. To determine whether a parent is unfit under section 19-3-604(1)(c)(II), the court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* § 19-3-604(2)(h); *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). In doing so, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by "considering the totality of the

circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

¶ 10 A parent's incarceration does not excuse a department from making reasonable efforts. *See* § 19-3-508(1)(e), C.R.S. 2025. When a department learns of a parent's incarceration, it must communicate with the facility where the parent is held regarding the requirements of the parent's treatment plan and provide information to the court detailing the services and treatment available to the parent at that facility. § 19-3-508(1)(e)(I)-(III). If the caseworker is unable to determine any treatment or services available to the parent, they must still report their efforts to obtain such information. *Id.*

¶ 11 The question of whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *Id.*

## B. Analysis

### 1. No Appropriate Treatment Plan

¶ 12    As a threshold matter, the Division argues that we need not address mother's reasonable efforts argument because, in addition to terminating mother's rights under section 19-3-604(1)(c), the juvenile court terminated her rights under subsection (1)(b)(II) — the subsection that allows a court to terminate a parent's rights when it finds that no appropriate treatment plan can be devised because the parent is unfit based on a single incident resulting in serious bodily injury (SBI). *See People in Interest of L.M.*, 2018 COA 57M, ¶¶ 20-21.

¶ 13    True, in its verbal and written orders terminating mother's rights, after the court made detailed findings of the criteria under subsection (1)(c), it made a brief conclusion that "[n]o treatment plan is currently devisable for either parent pursuant to C.R.S. § 19-3-604(1)(b)(II) as each parent pled to felony child abuse with serious bodily injury." And that finding is also supported by the record.

¶ 14    Further, the Division correctly asserts that when a juvenile court proceeds to termination under section 19-3-604(1)(b), it is not

5

required to consider whether the department made reasonable efforts. *See* § 19-3-604(1)(b)-(c), (2)(h); *People in Interest of C.Z.*, 2015 COA 87, ¶ 57. And section 19-3-604(1) permits termination so long as "at least one of the statutory grounds has been established by clear and convincing evidence." *People in Interest of D.C-M.S.*, 111 P.3d 559, 561 (Colo. App. 2005). Thus, when a court has properly terminated a parent's rights under subsection (1)(b), we need not address a parent's appellate contentions that are related only to subsection (1)(c). *See People in Interest of T.L.B.*, 148 P.3d 450, 458 (Colo. App. 2006) (declining to address appellate arguments related to section 19-3-604(1)(a) and (1)(c) because the juvenile court's findings met the criteria for termination under subsection (1)(b)).

¶ 15    But, the Division acknowledges that in its motion to terminate mother's parental rights, it "did not request that the court terminate . . . pursuant to section 19-3-604(1)(b)." Indeed, in its motion, the Division moved for termination under section 19-3-604 without specifying a subsection, detailing only facts supporting the criteria in subsection (1)(c) and did not mention any basis to terminate mother's parental rights under subsection (1)(b)(II)

6

because no appropriate treatment plan could be devised. Further, at the conclusion of its closing argument the Division, after detailing each of the criteria to terminate mother's parental rights under subsection 1(c), suggested that the court could also consider terminating mother's parental rights under subsection (1)(b)(II).

¶ 16 Accordingly, although the record supports the juvenile court's findings related to termination under section 19-3-604(1)(b)(II), we decline under these circumstances to find that mother is precluded from arguing we should reverse the termination order because under subsection (1)(c) it was error for the court to find that the Department had failed to make reasonable efforts to rehabilitate her Having decided that, we discern no error in the court's order terminating mother's rights under subsection (1)(c) and reject mother's argument that the court erred by finding that the Division made reasonable efforts as follows.

### 2. Reasonable Efforts

¶ 17 The juvenile court found that the Division made reasonable efforts to rehabilitate mother and reunite her with the child. To that end, the court found that the caseworker made "various attempts to get [mother] engaged in services despite [her]

7

incarceration and the protection order." The court further found that the Division's efforts were ultimately unsuccessful in rehabilitating mother because of the requirements of the criminal case, and more specifically, the protection order that prohibited contact between mother and the child.

¶ 18    The record supports the juvenile court's findings. The caseworker testified that she referred mother to the public health nurse and the parenting program. Both the public health nurse and the parenting program provided services to mother while she was at the jail, designed to help her understand child development and improve her parenting skills. However, the caseworker's court report, which was admitted into evidence, indicates that neither the public health nurse nor the parenting program could provide services to a parent at a DOC facility. Thus, when mother was transferred to the DOC facility, those services ended.

¶ 19    The caseworker also testified that throughout the case, she encouraged mother to participate in the services that were offered to her by the jail and the DOC facility. In terms of those services, the caseworker testified that mother had been on the waitlist for individual therapy while she was at the jail, but mother was

transferred to the DOC facility before any individual therapy occurred. Further, while mother was at the jail, she attended group therapy, met with a psychiatrist who helped her with medication management, and completed several parenting and anger management courses.

¶ 20    Next, the caseworker testified that at the DOC facility, mother attended weekly individual therapy. By the time of the termination hearing, mother was enrolled in an anger management group and on the waitlist for a dialectical behavioral therapy group. Mother had also completed an anger management evaluation at the DOC facility, but the caseworker was waiting for mother's case manager to provide the recommendations from that evaluation.

¶ 21    We reject mother's argument that the Division failed to make reasonable efforts because it did not comply with the requirements of section 19-3-508(1)(e)(I). The record belies mother's assertion. First, the caseworker specifically testified that she had been "in collateral contact with the Jefferson County jail and [mother's] DOC facility." She further testified that she "provided [each facility] with [mother's] treatment plan" and inquired about the services they offered. *See* § 19-3-508(1)(e)(I) (requiring a department to

communicate with an incarcerated parent's facility regarding the requirements of the court-ordered treatment plan). Second, throughout the case, the caseworker filed court reports that included summaries of the services and treatment that each facility provided to mother. *See id.* (requiring the caseworker to include information in their report that details the services and treatment available to a parent at the facility or jail where the parent is incarcerated).[1]

¶ 22    We also reject mother's argument that the Division failed to make reasonable efforts because the caseworker did not refer mother to any "outside providers [who] may have been able to provide services to mother in DOC." Mother does not identify what specific services were lacking. Nor does she articulate how those services would have made a difference in the outcome of the case. This is especially so given the juvenile court's finding that the "primary impediment" to mother becoming fit was the mandatory

---

[1] Although mother also argues that the Division failed to comply with section 19-3-508(1)(e)(III), we note that subsection (1)(e)(III) applies when, "after the dispositional hearing," a parent becomes continuously incarcerated. Here, mother became incarcerated before the dispositional hearing, and thus, subsection (1)(e)(III) does not apply.

protection order that prevented any contact with the child — an impediment that the Division could not have eliminated even if it had referred mother to "outside providers." Thus, even if the caseworker's efforts to find "outside providers" were lacking, any error in the court's determination that the Division made reasonable efforts to rehabilitate mother was harmless. *See* C.A.R. 35(c); C.R.C.P. 61; *People in Interest of M.H-K.*, 2018 COA 178, ¶ 21 (an error is harmless if it can be said with fair assurance that it did not substantially influence the outcome of the case or impair the basic fairness of the trial itself).

¶ 23    Similarly, we reject mother's argument that the Division failed to make reasonable efforts because it did not move to modify mother's treatment plan when she was transferred from the jail to the DOC facility. Her argument is based on the fact that even after mother was transferred to the DOC facility, her treatment plan still required her to "engage in any relevant services that Jefferson County jail offers" instead of services offered by DOC. Again, mother does not explain how modifying the treatment plan to say "DOC" instead of "Jefferson County jail" would have changed the outcome of the case. This is especially true in light of the evidence

showing that the caseworker was in contact with the case manager at mother's DOC facility and that mother was engaged in the services offered by the DOC facility. Accordingly, any error related to the failure to modify mother's treatment plan was harmless. *See* C.A.R. 35(c); C.R.C.P. 61; *M.H-K.*, ¶ 21.

¶ 24 Based on the foregoing, we discern no error in the juvenile court's finding that the Division made reasonable efforts to rehabilitate mother and reunite her with the child. Thus, we see no reason to reverse the juvenile court's order terminating mother's parental rights under section 19-3-604(1)(c).

## III. Disposition

¶ 25 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE BERNARD concur.