**A.L.L. and D.Z., Petitioners**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**C.Z., In the Interest of Minor Child.**

**No. 09SC621.**

Supreme Court of Colorado,
En Banc.

March 1, 2010.

J. Barry Meinster, Conifer, Colorado, Attorney for Petitioner, A.L.L.

Deborah Gans, Denver, Colorado, Attorney for Petitioner, D.Z.

Joseph Fattor, County Attorney, Alison D. Casias, Special Assistant County Attorney, Dillon, Colorado, Attorneys for Respondent, The People of the State of Colorado.

Robert G. Tweedell, Delta, Colorado, Paula Constantakis Young, Denver, Colorado, Guardians Ad Litem for C.Z.

William Louis, County Attorney, Laura C. Rhyne, Deputy County Attorney, Colorado Springs, Colorado, Attorneys for Amicus Curiae, The El Paso County Department of Human Services.

Sarah Ehrlich, Sheri Danz, Denver, Colorado, Attorneys for Amicus Curiae, The Colorado Office of the Child's Representative.

N. Lawrence Hoyt, County Attorney, Toni Jo Gray, Assistant County Attorney, Boulder, Colorado, Attorneys for Amicus Curiae, The Boulder County Department of Housing and Human Services.

Justice MARTINEZ delivered the Opinion of the Court.

This case arises from a dependency and neglect (D & N) proceeding after which the trial court ordered the parental rights of A.L.L. and D.Z. terminated. The parents directed their court-appointed attorneys to appeal the trial court's order. After reviewing the decision and the record, the attorneys for both parents determined that there were no meritorious arguments to pursue on appeal. At the request of the court of appeals, counsel submitted briefs arguing that Colorado should adopt a procedure under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), for D & N appeals. We accepted prejudgment certiorari under C.A.R. 50 to clarify the duties of court-appointed counsel when their client exercises an appeal by right and yet cannot identify a meritorious legal argument to support their claim for relief.[1] We conclude that, where a court-appointed attorney represents a litigant with a right to an appeal, she has an obligation to advocate on her client's behalf. We determine that a parent's rights are better protected by full appellate review than by an *Anders* briefing procedure, and so we remand this case for further consistent proceedings.

## I. Procedural Posture

Prior to certifying the case to this court, the court of appeals struck the petitions on appeal that outlined substantive issues concerning the termination order that is being challenged here. As the merits of this ap-

---

1. The issue on which we granted certiorari read as follows:

    Whether Colorado should adopt a procedure under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), for dependency and neglect appeals that would apply to

    an indigent parent's appeal of an order terminating parental rights when appointed counsel believes there are no viable issues for appeal. *See, e.g., Linker–Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739, 745–48 (2004) (compiling cases).

peal have neither been briefed nor argued, we cannot finally resolve this matter. The only issue before us is whether and in what ways the United States Supreme Court's decision regarding criminal appeals in *Anders v. California* should be applied to D & N proceedings in Colorado. After resolving that issue, we remand the case to the court of appeals for further proceedings consistent with this opinion.

After all appropriate D & N proceedings, the trial court ordered the parental rights of A.L.L. and D.Z. terminated with respect to their child, C.Z. Electing to exercise their statutory rights to counsel and appeal, A.L.L. and D.Z. directed their court-appointed attorneys to appeal the termination of their parental rights. *See* §§ 19–1–105, 19–3–202(1), C.R.S. (2009) (right to counsel); § 19–1–109(2)(b), C.R.S. (2009) (right to an appeal).

Counsel for both A.L.L. and D.Z. during the termination hearing subsequently submitted petitions on appeal to the court of appeals. The petitions were crafted to comply with those procedures outlined by the Supreme Court in *Anders* to protect a client's rights while simultaneously respecting an attorney's ethical bar against bringing frivolous claims before a court. *See* 386 U.S. at 744, 87 S.Ct. 1396. The petitions identified potential legal issues arising from the termination hearing that might be challenged on appeal. The parents' trial counsel then described why, with each identified legal issue, they felt the trial court had properly considered applicable law and relevant facts. Counsel concluded that there were no viable issues on appeal and requested that they be allowed to withdraw from their respective roles representing the parents.

The court of appeals granted the trial attorneys' motions to withdraw and appointed new appellate counsel for each parent. The original petitions on appeal filed by trial counsel were ordered stricken. Appellate counsel were given time to file amended petitions on appeal. However, the court of appeals ordered that if new counsel also concluded that there were no viable issues for appeal, appellate counsel should instead submit supplemental petitions "explaining

whether Colorado should adopt a procedure under [*Anders*] for dependency and neglect appeals." *See* 386 U.S. at 744, 87 S.Ct. 1396 (describing a briefing procedure).

Court-appointed appellate counsel for both A.L.L. and D.Z. agreed with the trial attorneys' determinations that there were no viable issues on appeal, and so submitted briefs arguing that Colorado should adopt procedures under *Anders* for dependency and neglect appeals. Thereafter, the court of appeals referred the case to this court pursuant to section 13–4–109(a), (b), and (c), C.R.S. (2009). We accepted prejudgment certiorari under C.A.R. 50 to clarify the duties of court-appointed counsel when their client exercises an appeal-by-right and yet cannot identify a meritorious legal argument to support their claim for relief.

## II. Analysis

The parties here argue that a procedure such as the one set forth by the Supreme Court in *Anders* for criminal appeals is necessary to address those situations where court-appointed attorneys are asked by their clients to pursue an appeal they feel is wholly without merit. We disagree.

We begin with a discussion of the Supreme Court's decision in *Anders*, then discuss how the issues in that opinion have been addressed in Colorado, and finally turn to the D & N context. We conclude that a lack of merit neither renders an appeal of a termination order frivolous nor constitutes sufficient grounds to allow an attorney's withdrawal. As such, we remand this case to the court of appeals for further consistent proceedings.

### A. *Anders*

In *Anders v. California*, the Supreme Court held that a criminal defendant's right to counsel must be protected even where his court-appointed attorney determines that an appeal is without merit. 386 U.S. at 744, 87 S.Ct. 1396. There, the defendant was convicted of marijuana possession and sought an appeal. After reviewing the record, his court-appointed attorney filed a letter with the District Court of Appeal in California

stating he was of the opinion that there was "no merit in the appeal." *Id.* at 742, 87 S.Ct. 1396. Anders' request for new counsel was denied, and he continued pro se. His conviction was affirmed, and all subsequent challenges were summarily dismissed by reviewing courts. *Id.* at 740–41, 87 S.Ct. 1396. The Supreme Court reversed and remanded the case after concluding California's "no-merit letter" procedure "did not furnish [Anders] with counsel acting in the role of an advocate nor did it provide that full consideration and resolution of the matter as is obtained when counsel is acting in that capacity." *Id.* at 743, 87 S.Ct. 1396.

To address the failings of California's procedure, the Court went on to outline another procedure that would be an "adequate substitute for the right to full appellate review" and that protected a criminal defendant's right to counsel in the event that court-appointed counsel determined there were no viable issues for appeal and moved to withdraw from the case. *See id.* at 742, 744, 87 S.Ct. 1396. Specifically, where a court-appointed attorney determines his client's appeal to be "wholly frivolous," he may inform the court of that determination and request to withdraw from the case. *Id.* at 744, 87 S.Ct. 1396. However, the request to withdraw must be "accompanied by a brief referring to anything in the record that might arguably support the appeal," and the litigant must be given an opportunity to raise any further points not presented by her attorney. *Id.* The reviewing court then proceeds to determine whether the appeal is "wholly frivolous." *Id.* If the court identifies legal points arguable on the merits, the litigant must be afforded new counsel to argue the appeal. *See id.*

The Supreme Court's opinion in *Anders* is best viewed as comprising two distinct components: the first addresses a problem; the second outlines a procedure. The first component of *Anders* considers the threat to a criminal defendant's constitutional rights where his court-appointed attorney concludes his appeal is without merit. The Court an-

swers this threat simply: "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate [on] behalf of his client." *Id.* at 744, 87 S.Ct. 1396. The Court recognized that court-appointed counsel must act as an advocate for his client and not "merely review the case and cast aside the points urged by [his client] as being without merit." *McClendon v. People,* 174 Colo. 7, 12, 481 P.2d 715, 717–18 (1971) (discussing *Anders*). A court-appointed attorney cannot abandon her duties to her clients in favor of her duties to the court; where a defendant has rights to counsel and an appeal, his court-appointed lawyer must protect those rights in accordance with due process and equal protection in spite of any misgivings she may have about the merits of the appeal. *See Anders,* 386 U.S. at 741, 87 S.Ct. 1396.

As the second component of its opinion in *Anders,* the Supreme Court outlined a procedure to protect the defendant's rights where his lawyer feels the appeal is "wholly frivolous" and moves to withdraw. Of course, within the boundaries of due process and equal protection, the details of attorney regulations are left to a state's sovereign control. *See Hoover v. Ronwin,* 466 U.S. 558, 569 n. 18, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984) (stating that "regulation of the bar is a sovereign function of the [state]" because "[f]ew other professions are as close to the core of the State's power to protect the public ... [or] as essential to the primary governmental function of administering justice" (internal quotations and citations omitted)).[2] Thus, just what constitutes a "wholly frivolous" appeal is a matter of state law. As a corollary, the preliminary determination in *Anders* as to whether the defendant's attorney should be allowed to withdraw after concluding that his client's appeal was without merit was left to California. The Supreme Court never addressed whether a lawyer's determination that an appeal entirely lacked merit constituted a "wholly frivolous" action. Rather,

---

2. This court's plenary power to regulate the bar is well established. *See* C.R.C.P. 251.1; *In re Cardwell,* 50 P.3d 897, 904 (Colo.2002) ("[A]s part of our constitutional and inherent powers, this court has exclusive jurisdiction over lawyers, and possesses the plenary authority to regulate and supervise the practice of law in Colorado.").

the Court assumed that to be the case, as directed by the determinations of California's courts. Thus, the second component of the *Anders* opinion essentially holds that *if* a court deems it necessary to allow withdrawal in such circumstances, *then* it must erect procedures to protect the client's rights to counsel and an appeal such as the one sketched out there. *Id.* at 744, 87 S.Ct. 1396.

Unfortunately, courts and commentators have often conflated these distinct components of the Supreme Court's opinion, confusing the problem addressed in *Anders* and the role of the procedure outlined therein. Furthermore, the Supreme Court never clearly identified the line between when a court-appointed attorney has satisfied the constitutional mandate of advocacy and when he has unilaterally donned the role of amicus curiae and thereby rendered constitutionally deficient representation. *See id.* at 744, 87 S.Ct. 1396; *Haines v. People,* 169 Colo. 136, 145, 454 P.2d 595, 599 (1969) (discussing *Anders'* "intendment . . . that an indigent defendant shall have counsel who is an Advocate rather than Amicus curiae"). The confusion is made worse by the plain fact that briefs by amici to the court often appear indistinguishable from those of the parties in the way arguments are structured and presented. However, as we read *Anders,* the gravamen of the Supreme Court's opinion there targets the *role* of a court-appointed lawyer rather than the substance of her brief to the court. *See Anders,* 386 U.S. at 742–44, 87 S.Ct. 1396. Arguments may vary widely in their effectiveness in pursuing a client's desired outcome in a case. What equal protection does not allow is for court-appointed attorneys to abandon their role as careful and compassionate advocates for their clients where a richer client would be able to buy a lawyer's efforts even when a case seemed hopeless, just to ensure their arguments were heard. *See id.* at 742, 745, 87 S.Ct. 1396.

▮▮▮ In Colorado, we address the two components of *Anders* separately. First, the problem addressed in *Anders* is a salient one

and its resolution—that the client's rights must be protected in spite of his lawyer's conclusions—is binding upon us. An appointed attorney cannot shirk her duty to represent her client and instead "serve as the court's fact-finder." *People v. Breaman,* 939 P.2d 1348, 1351 (Colo.1997). However, the procedure contained in *Anders* is not obligatory upon the states; other state-crafted procedures or policies that adequately protect the rights of indigent criminal defendants need not adhere to its details. *See Smith v. Robbins,* 528 U.S. 259, 272–76, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The procedure outlined by the Supreme Court merely set forth the "minimum requirements" to protect the defendant where the withdrawal is allowed. *See McCoy v. Wis. Ct.App.,* 486 U.S. 429, 442, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988). Despite the Supreme Court's comment in *McCoy* that an attorney has an "ethical obligation to refuse to prosecute a frivolous appeal," 486 U.S. at 436, 108 S.Ct. 1895, the Court has since emphasized that it is up to the states to regulate attorney conduct, *Smith,* 528 U.S. at 273–76, 120 S.Ct. 746, and indeed has approved of alternatives to the *Anders* procedure in which the appellate counsel does not withdraw from a case that could be described as frivolous under *Anders, see id.* at 280, 120 S.Ct. 746. *See also State v. Balfour,* 311 Or. 434, 814 P.2d 1069, 1079 (1991) (noting despite *McCoy* that the U.S. Supreme Court "is not the arbiter of ordinary questions of ethical practices for attorneys in state court," and concluding that Oregon attorneys are under no mandatory ethical obligation to withdraw upon concluding their clients' cases to be frivolous). Where, as in Colorado, a court does not allow the appointed attorney to withdraw from representation solely because he concludes the appeal to be without merit, the defendant's rights are protected through the normal course of appellate review.[3]

## B. Colorado's Practice in Criminal Appeals

In our decision in *McClendon v. People* in 1971, we approved of the American Bar As-

---

3. For a review of the numerous practices among the states addressing the *Anders* problem, *see* James E. Duggan & Andrew W. Moeller, *Make*

*Way for the ABA: Smith v. Robbins Clears a Path for Anders Alternatives,* 3 J. App. Prac. & Process 65 (2001).

sociation's approach to the *Anders* problem as outlined in its Standards for Criminal Justice—an approach that faithfully addresses the constitutional and ethical concerns at play when a court-appointed attorney concludes his client's appeal entirely lacks merit but that renders unnecessary the cumbersome procedure outlined in *Anders* for those states that have not otherwise addressed the issue. 174 Colo. at 12, 481 P.2d at 717–18. The Standards state, "[c]ounsel for a defendant-appellant should not seek to withdraw from a case because of counsel's determination that the appeal lacks merit." *ABA Standards for Criminal Justice: Criminal Appeals* § 21–3.2(b) (3d ed.1993). Rather, "[i]f the client chooses to proceed with an appeal against the advice of counsel, counsel should present the case, so long as such advocacy does not involve deception of the court." *ABA Standards for Criminal Justice: Prosecution Function & Def. Function* § 4–8.3 (3d ed.1993). Comments to Standard 4–8.3 (3d ed.) further elaborate this approach:

> Before the merits of an appeal are determined by an appellate court, the defendant is entitled to the zealous advocacy of a lawyer in fact as well as in name.... When a client seeks to prosecute an appeal against the advice of counsel that there is no hope for success, counsel should present the case but cannot deceive or mislead the court on behalf of the client.

By requiring a lawyer to present her client's case, even where the attorney feels the appeal is meritless, the defendant's rights are protected through the normal course of appellate review rather than by some "substitute" therefor. *Cf. Anders,* 386 U.S. at 742, 87 S.Ct. 1396.[4]

Underlying this approach is the determination that, despite the parties' arguments to the contrary, a court-appointed attorney who determines her client's desired appeal lacks merit does not face an intractable ethical dilemma: where a client enjoys rights to an attorney and an appeal, the action is not frivolous merely because it appears hopeless.[5]

The parties here contend that disparate provisions of the Colorado Rules of Professional Conduct give rise to conflicting mandates where court-appointed counsel are directed by their clients to pursue an appeal they feel is without merit. Specifically, the parties note that, on the one hand, the preamble to the Colorado Rules of Professional Conduct states that, "[a]s [an] advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." Furthermore, Colo. RPC 1.2(a) requires that a lawyer "abide by a client's decisions concerning the objectives of representation." *See also ABA Standards for Criminal Justice: Prosecution Function & Def. Function* § 4–8.2 (3d ed. 1993) ("The decision whether to appeal must be the defendant's own choice."). On the other hand, though, the rules state that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." Colo. RPC 3.1. Moreover, attorneys have a duty of candor to the court which prohibits them from knowingly making false

---

**4.** Any argument that the approach developed by the ABA and taken by this court in *McClendon* is but a limited component of the *Anders* procedure applying only where the claim lacks merit but could still be reasonably presented is groundless. Even the Supreme Court implicitly recognized that the ABA approach is an alternative to—rather than a subsidiary of—the procedure sketched out in *Anders*. *See Smith v. Robbins,* 528 U.S. 259, 276 & n. 7, 120 S.Ct. 746, 145 L.Ed.2d 756 (indicating that states had already crafted "procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*," and citing Martha C. Warner, *Anders in the Fifty States: Some Appellants' Equal Protection is More Equal than Others,* 23 Fla. St. U.L.Rev. 625, 642–62 (1996) (hereinafter *"Anders in the Fifty States "*), which argues extensively that the

ABA approach satisfies the *Anders* requirements and better serves the purposes of equal protection, and identifies numerous courts that have adopted the approach).

**5.** As the Supreme Court noted in *McCoy,* the terms "wholly frivolous" and "without merit" are often used interchangeably in the context of *Anders*-type problems. 486 U.S. at 438 n. 10, 108 S.Ct. 1895. This likely accounts for the ABA's subsequent abandonment of the notion that the Supreme Court's decision in *Anders* rested on the narrow distinction between "complete frivolity" and an "absence of merit." *Cf. ABA Standards Relating to the Prosecution Function & the Def. Function* § 8.3 cmt. b, p. 297 (1971).

statements of material fact or law, or knowingly failing to disclose adverse controlling legal authority. *See* Colo. RPC 3.3. The parties here urge that when a court-appointed attorney is directed by her client to pursue an appeal that the attorney feels is without merit, the attorney is put in the difficult situation of disregarding her client's wishes, presenting a frivolous appeal, or violating her duty of candor.

We perceive no such dilemma. The ethical duties of a court-appointed attorney tasked with what she concludes to be a meritless appeal are not so incompatible as the parties insist. As the Arizona Court of Appeals noted:

> The duty of candor requires that an attorney not make a false statement of fact or law to a court, offer false evidence, or fail to disclose a material fact or controlling legal authority. None of those duties directly affects the task of arguing issues on appeal so long as counsel does not misstate the facts or the law.

*Denise H. v. Ariz. Dep't of Econ. Sec.,* 193 Ariz. 257, 972 P.2d 241, 244 (Ct.App.1998) (citations omitted) (discussing analogous state rules of ethics). So long as the attorney does not misstate the facts or controlling law, she is free to present her client's arguments to the court as well as her client's desire to prevail.

Moreover, an utter lack of merit does not render an appeal by right "wholly frivolous." Comment 2 to the Colorado RPC 3.1 concerning meritorious claims describes a frivolous action as follows:

> [A]n action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

By approving of the ABA approach in *McClendon,* we implicitly held that, while the merit of an appeal may be related to a deter-mination of its frivolity, a lack of merit alone is not sufficient to render a criminal defendant's appeal by right "wholly frivolous." To the contrary, an appointed attorney cannot be held to have violated her ethical duties by presenting apparently meritless claims where her client's right to take the appeal is protected by law. If a defendant is not entitled to prevail on appeal, that conclusion will quickly become evident upon review of the controlling law and examination of the defendant's best arguments.

Contrary to this approach, the Colorado Bar Association Ethics Committee has indicated that counsel may seek to withdraw where it is impossible to "make a good faith argument for reversal." Colo. Bar Ass'n Ethics Comm., Formal Op. 114 (2006). However, this assertion undervalues the *role* of an advocate in an appeal by right and equates advocacy with the requirement of a specific conclusion. *Contra Anders,* 386 U.S. at 743–44, 87 S.Ct. 1396. Certainly advocates are required to pursue good faith arguments on their client's behalf. Colo. RPC 3.1 cmt. 2. But a good faith argument need not conclude with the lawyer's assertion that her client is entitled to prevail. A legal argument is but a discussion of pertinent facts and the application of controlling law that highlights those components more favorable to the client. In those instances where it is possible, and with widely varying levels of success, a lawyer strives to calibrate her arguments such that they lead to the conclusion that her client's desired outcome is also the just and logical one. Indeed, where it is possible to do so, it is the lawyer's duty to do so. Of course, where it is impossible to reasonably assert that her client is entitled to prevail, we will not require her to so conclude, but neither will we entirely discount the value of the advocate's role merely because she cannot assert this final conclusion within her ethical bounds. A limitation on the substance of the advocacy does not undermine the value of an advocate's role, which remains—even without an assertion that the defendant is entitled to prevail—valuable to both the defendant and the court. Rather, where the facts and law leave no other option, a lawyer's conscientious and

sensitive efforts to locate viable issues, honestly represent her client's impressions of injustice, and navigate the appellate process on her client's behalf are sometimes all that can be asked of a zealous advocate making a good faith argument. And where the client's rights to an appeal and to appellate counsel are protected by law, that role is not merely asked, it is mandated.

An attorney has discretion to choose which arguments to make on appeal, *see Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); what the attorney cannot do is choose not to pursue the appeal at all. If an attorney cannot discern a meritorious legal argument in support of her client's appeal, she must present those issues her client wishes to be addressed. Where neither law nor facts can be framed in support of her indigent client, a court-appointed attorney's obligation as a zealous advocate is fulfilled by accurately describing the facts of the case, locating and applying controlling law, and presenting the issues her client wishes to be considered. Of course, "in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change." Colo. RPC 3.1 cmt. 1.

Zealous advocacy may not allow the lawyer to make persuasive arguments in every instance, nor does it require the lawyer make a plea for a particular result.[6] Indeed, the *substance* of an advocate's brief in such an instance may differ only slightly from a so-called *Anders* brief. But the *role* of that advocate throughout the appellate process is crucial, and indeed guaranteed wherever the constitution or General Assembly has extended a litigant the rights to counsel and an appeal. In those rare instances where the law and the facts of a case conspire to confine the role of an advocate to helping her client locate the client's best arguments, even if apparently hopeless, the sensitive and compassionate representation of her client's best arguments, assisting the client in navigating the procedures of appeal, and directing the appellate court to the controlling law that should direct its review, the attorney will have fulfilled her duties and upheld her ethical obligations in doing so.

Importantly, the ABA approach better protects a defendant's rights. As Judge Warner noted after her extensive review of state courts' implementation of the *Anders* decision, "If the ultimate fairness of the proceeding is determined by the effectiveness of counsel in representing the defendant, then the goal should be to compel full representation through appeal and not to allow for that representation to be avoided." *Anders in the Fifty States*, 23 Fla. St. U.L.Rev. at 661–62. Warner argues those states that refuse to allow attorneys to withdraw because they deem the appeal wholly meritless more effectively provide for the right to counsel than states that allow withdrawal. *See id.; see also State v. Cigic*, 138 N.H. 313, 639 A.2d 251, 254 (1994) (noting that the ABA approach "preserves the adversarial nature of criminal appeals, which 'is much to be preferred over [the *Anders* ]˙process in which the appellate judge feels obliged to act as a lawyer and the appellate lawyer feels constrained to rule as a judge.' " (quoting *Gale v. United States*, 429 A.2d 177, 182 (D.C.App. 1981) (Ferren, J., dissenting))); *State v. Gates*, 466 S.W.2d 681, 683–84 (Mo.1971) (adopting the ABA approach and noting that *Anders*-style procedures "put defense counsel in the awkward position of arguing against his client"). Indeed, the Idaho Supreme Court deemed it clear that appellate counsel's "mere submission" of a motion to withdraw under *Anders* "cannot but result in prejudice" to her client. *State v. McKenney*,

---

6. Early commentary to the ABA Standard 21–3.2 noted that,

> [b]y some measures, this is demeaning of the professional role of an attorney. The Code of Professional Responsibility declares that "[a] lawyer should have pride in his professional endeavors." Given the circumstances, counsel should be able to take pride in accomplishing a difficult professional task. The appellate court is better able to accomplish its duties when a case is presented by counsel rather than by an untutored layperson. If the lawyer has done the work competently, the client's interest has been served as well. Having accomplished the dual mission of serving court and client, counsel need not want for professional satisfactions.

*ABA Standards for Criminal Justice* § 21–3.2 cmts. (2d ed. 1986) (quoting ABA, Code of Professional Responsibility EC6–).

98 Idaho 551, 568 P.2d 1213, 1214 (1977). As Warner concluded, "the real problem with [the *Anders* procedure] is that it creates two distinct classes of appellate review for criminal defendants and results in a failure of equal protection." *Anders in the Fifty States*, 23 Fla. St. U.L.Rev. at 663.

■ Our approval of the ABA approach in *McClendon* notwithstanding, divisions of the court of appeals have indicated that they would accept an *Anders*-style brief in conjunction with an attorney's motion to withdraw where an attorney determines her client's appeal is without merit. *See, e.g., People v. Marquez*, 37 Colo.App. 441, 548 P.2d 939 (1976). We here disapprove of that practice. Even where a court-appointed attorney feels her client's appeal is without merit, she must nonetheless abide by both her duties as an advocate and as an officer of the court. "It is not the lawyer's role to pass judgment on a client's cause." *ABA Standard for Criminal Justice* 21–3.2 cmts. (2d ed. 1986).

Finally, any claim that this court "adopted" the *Anders* procedure in *Breaman* in place of the ABA approach misreads that case. *Breaman* concerned post-conviction relief proceedings under Crim. P. 35(c), a context in which this court has not recognized a right to counsel. *See* 939 P.2d at 1350. There, the trial court appointed a lawyer for the defendant to review a defendant's claims and determine whether they were frivolous. In the process of disapproving of the trial court's actions confining the appointed lawyer to serving as a fact-finder rather than the defendant's representative, we recognized in a footnote that, while an *Anders*-style motion to withdraw is appropriate in criminal cases in some jurisdictions, it was unneeded for Crim. P. 35(c) proceedings. *See id.* at 1351 n. 1. The footnote—far from central to our ultimate holding—focuses on those contexts where the defendant does not have a right to counsel, unlike the situation in *Anders* and unlike the situation presented here. Thus, the passing comment in *Breaman* neither controls nor informs our consideration in this case. *Breaman* does unequivocally state, though, that appointed counsel must act in the role of advocate and cannot act as a friend of the court. *See id.* That holding is consistent both with the Supreme Court's concern with the role played by appointed attorneys in *Anders* and with our conclusion here.

Thus, an attorney appointed to a client with an appeal by right who concludes her client's appeal is without merit does not face an intractable ethical dilemma and so should not be allowed to withdraw from the case on that basis alone. Furthermore, due process and equal protection are best served through the normal course of appellate review, and an indigent defendant's rights are best protected where counsel presents her client's best arguments as an advocate. Thus, the procedure outlined in *Anders* is unnecessary in Colorado where the defendant's rights are protected through the normal course of appellate review notwithstanding his lawyer's misgivings about the merit of the appeal.

### C. D & N Proceedings

■ Unlike the constitutional right to counsel at issue in *Anders*, a parent's rights to counsel and an appeal in D & N proceedings are statutory in nature. *See C.S. v. People*, 83 P.3d 627, 636 (Colo.2004) ("A parent's right to appointed counsel in termination proceedings is secured by statute...." (citing § 19–1–105 and § 19–3–202(1))); *People ex rel. A.E.*, 994 P.2d 465, 466 (Colo.App.1999) (parents have a right to an immediate appeal of an order terminating their parental rights (citing § 19–1–109(2)(b), C.R.S. (2009))). However, as with the criminal proceedings at issue in *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, termination proceedings cue constitutional due process concerns. *See Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."); *People ex rel. M.B.*, 70 P.3d 618, 622 (Colo.App. 2003) ("Termination of the parent-child legal relationship is a drastic remedy and a parent is entitled to procedural due process before termination occurs."). Furthermore, once an indigent litigant has been appointed counsel, we refer to our constitutional jurisprudence to determine the scope of the obligation

borne by the appointed attorney. *See, e.g., Breaman,* 939 P.2d at 1351 (stating that, even where a defendant did not have a right to appointed counsel, "[h]aving made the decision to appoint such counsel ... the district court was not entitled to deny [the defendant] effective representation of that counsel"). Thus, the obligation of court-appointed attorneys to advocate for indigent parents in termination proceedings is no different than the obligation imposed on counsel appointed to represent criminal defendants on appeal.

Furthermore, proceedings for the termination of parental rights implicate a number of important interests, including "the interests of the parent and child in a continuing family relationship; the interests of the parent in preserving the integrity and privacy of the family unit; [and] the interest of the child in a permanent, secure, stable, and loving environment." *People ex rel. C.A.K.,* 652 P.2d 603, 607 (Colo.1982). Extending a parent facing such proceedings the rights to counsel and an appeal demonstrates a decision that, so abhorrent to our notions of justice is the possibility of wrongfully terminating a parent's rights, the parent must be able to seek meaningful review of the order, whatever the specific circumstances of his case. Therefore, pursuit of such an appeal—with the guaranteed aid of court-appointed counsel—serves an important function and cannot be said to be "wholly frivolous" for lack of merit alone.

The parties and amici also underscore the interests of the child in obtaining a swift and final resolution in termination proceedings and suggest that an *Anders*-style, no-merits briefing procedure better fits with the mandate that these matters be quickly resolved. *See, e.g.,* § 19–1–102(1)(c), C.R.S. (2009) (directing courts to proceed with "all possible speed" to a legal determination). We are not persuaded.

The procedure outlined in *Anders* does little for judicial economy. To properly consider an appointed appellate attorney's motion to withdraw, an appellate court must both thoroughly review the record in order to ensure counsel has not missed any appealable issues and consider—at least to some extent—the merits of any issues the court identifies in the record or that the attorney has identified in her briefs. *See McCoy,* 486 U.S. at 442, 108 S.Ct. 1895; *see also Penson v. Ohio,* 488 U.S. 75, 83, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (concluding the state court erred when it failed to appoint new counsel after determining the record supported "several arguable claims" (citing *Anders,* 386 U.S. at 744, 87 S.Ct. 1396; *McCoy,* 486 U.S. at 444, 108 S.Ct. 1895)). Such a searching review that requires appellate courts to play the roles of both advocate and tribunal cannot be considered the swifter path to resolution of the issues. *See State v. McKenney,* 98 Idaho 551, 568 P.2d 1213, 1214 (Idaho 1977) ("[L]ess of counsel and the judiciary's time and energy will be expended in directly considering the merits of the case in its regular and due course as contrasted with a fragmented consideration of various motions, the consideration of which necessarily involves a determination of merits.").

Moreover, termination proceedings must be just in addition to being swiftly executed. *See* § 19–1–102(1)(b) (directing the preservation of family ties wherever possible); *People ex rel. M.B.,* 70 P.3d 618, 622 (Colo.App. 2003). Full appellate review—rather than some substitute therefore—better protects a parent's rights, thereby bolstering the integrity and stability of the final termination order, and is consistent with protecting the child's interest in permanency.

■ As such, we conclude that an appointed lawyer for an indigent parent during D & N proceedings cannot withdraw solely because she determines the appeal to be without merit.[7] Rather, an appointed appellate lawyer who reasonably concludes a parent's appeal is without merit must nonetheless file petitions on appeal in accordance with C.A.R. 3.4, which requires that petitions on appeal from D & N proceedings include, *inter alia,* a statement of the nature of the case, concise statements of the facts and legal issues presented on appeal, and a description and ap-

---

**7.** To the extent that it suggests that withdrawal would be available so long as accompanied by an *Anders* brief, we here disapprove of *People ex rel. D.M.,* 186 P.3d 101 (Colo.App.2008).

plication of pertinent sources of law. *See* C.A.R. 3.4(g)(3). The legal issues presented in the brief can be either those identified and developed by the attorney, or, if she can find none, those points the parent wants argued. The petition in such instances, though perhaps wholly unpersuasive, is not wholly frivolous. In so doing, even where the parent's attorney concludes the appeal is meritless, she abides by her dual obligations to her client and to the court, and remains an advocate in fact as well as in name.

In Colorado, *Anders* briefs are inappropriate and unnecessary in the context of D & N proceedings, just as in criminal appeals. Appellate review of a parent's best arguments—however weak—made with the assistance of counsel best protects the parent's rights, supports the child's interests in permanency and finality, and avoids the injection of unnecessary confusion and delay into the reviewing process.

### III. Conclusion

We remand this case to the court of appeals with directions to order appellate counsel to brief their case in accordance with this opinion.

Justice EID dissents and Justice RICE joins in the dissent.

Justice EID, dissenting.

Today the majority finds that an appointed lawyer, when faced with an indigent client who wishes to proceed with an appeal but who has nothing but frivolous arguments in support of his position, cannot seek to withdraw from the representation even though such representation will violate the Colorado Rules of Professional Conduct. *See* Colo. RPC 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous...."); *People v. Breaman,* 939 P.2d 1348, 1351 n. 2 (Colo.1997) ("If appointed counsel ... determines that [her client's] case is wholly frivolous ... she should so advise the court and request permission to withdraw."). Instead, "[w]here neither law nor facts can be framed in support of her indigent client," the lawyer

*must proceed* with the frivolous appeal, doing her best to convey her "client's desire to prevail." Maj. op. at 1060, 1061. In my view, the majority's "my client would like to prevail" approach places the appointed attorney in the untenable position of making wholly frivolous arguments, and provides little corresponding benefit for the respondent parent whose wishes to prevail are expressed to the court. I therefore respectfully dissent from the majority's opinion.

The lawyers in this case faced a potential ethical dilemma. They were appointed by the court to represent the respondent parents in this case pursuant to sections 19–1–105 and 19–3–202(1), C.R.S. (2009), which provide that indigent parents in dependency and neglect actions are entitled to counsel at state expense. The parents instructed their lawyers that they wished to appeal the district court's order terminating their parental rights. Under Colo. RPC 1.2(a), a lawyer must "abide by a client's decision concerning the objectives of representation...." The lawyers filed the notices of appeal. After delving into the case, however, the lawyers stated that that they could make no argument on the parents' behalf urging reversal of the district court's order. Under Colo. RPC 3.1, a lawyer "shall not ... assert ... an issue [in an appeal], unless there is a basis in law and fact for doing so that is not frivolous...." An argument is "frivolous" "if the lawyer is unable either to make a good faith argument on the merits [of the appeal] or to support [the appeal] by a good faith argument for an extension, modification or reversal of existing law." Colo. RPC 3.1 cmt. 2. Here, the lawyers concluded that such a "good faith argument" could not be made. Accordingly, the lawyers sought to withdraw from the case. *See* Colo. RPC 1.16(a)(1) (lawyer must seek to withdraw when representation would result in violation of the Colorado Rules of Professional Conduct).

Given the apparent dilemma faced by the lawyers in this case (namely, a direction from the client to pursue an appeal that could be supported only by frivolous arguments), the lawyers pursued the only course available under the Colorado Rules of Professional Conduct (namely, to seek to withdraw). As

the Ethics Committee of the Colorado Bar Association concluded:

> In such circumstances, an attorney who determines that a parent's claims on appeal lack merit may so inform the court and request permission to withdraw. However, ... an attorney may not request permission to withdraw ... unless, among other things, the client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law....

Colo. Bar Ass'n Ethics Comm., Formal Op. 114 (2006) (hereinafter "CBA, Formal Op. 114"). Indeed, in the criminal context, we have stated: "If appointed counsel in the first appeal from a criminal conviction determines that the defendant's case is wholly frivolous, after a conscientious examination of it, he or she should so advise the court and request permission to withdraw." *Breaman,* 939 P.2d at 1351 n. 2 (citing *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)). If a client has instructed his lawyer to appeal under Colo. RPC 1.2(a) but the lawyer cannot make a good faith argument to support that appeal as required under Colo. RPC 3.1, she cannot continue with such a "representation [that] will result in violation of the Rules of Professional Conduct" and accordingly must withdraw. Colo. RPC 1.16(a)(1).

The majority resolves this potential dilemma by simply denying that a dilemma could exist in the first place. According to the majority, "a court-appointed attorney who determines her client's desired appeal lacks merit does not face an intractable ethical dilemma: where a client enjoys rights to an attorney and an appeal, the action is not frivolous merely because it appears hopeless." Maj. op. at 1059. But the majority's approach to the problem in this case is the classic straw man. The majority concludes that there could be no dilemma in this case because there is no ethical violation in filing an appeal that "lacks merit" or where a case appears "hopeless." I wholeheartedly agree. As comment 2 to Colo. RPC 3.1 expressly recognizes, an appeal "is not frivolous even

though the lawyer believes that the client's position ultimately will not prevail." *See also Breaman,* 939 P.2d at 1351 n. 1 (noting that a lawyer may make any argument that, "although unlikely to prevail, may be reasonably advanced"). As the ABA Project on Standards for Criminal Justice concluded, *Anders* itself "appears to rest narrowly on the distinction between complete frivolity" (in which withdrawal is appropriate) and "absence of merit" (in which withdrawal is not). *ABA Standards Relating to the Prosecution Function & the Def. Function* § 8.3 cmt. b, p. 297 (1971).

In sum, the problem in this case is not, as the majority frames it, what a lawyer should do when she believes her client's argument lacks merit. The answer to that question is well-settled: she must proceed. *See Breaman,* 939 P.2d at 1351 n. 1; *Anders,* 386 U.S. at 744, 87 S.Ct. 1396; CBA, Formal Op. 114 (citing *Breaman,* 939 P.2d at 1351 n. 1). The lawyer confronts an ethical dilemma only when she determines that an appeal cannot be supported by an argument with "a basis in law and fact" nor "a good faith argument for an extension, modification or reversal of existing law." Colo. RPC 3.1; CBA, Formal Op. 114 (lawyer cannot proceed when "the client insists upon presenting [an argument] that is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law"). In other words, a lawyer cannot present an appeal that is "wholly frivolous." *Breaman,* 939 P.2d at 1351 n. 2; *see also McCoy v. Court of Appeals,* 486 U.S. 429, 436–37, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988) ("An attorney, whether appointed or paid, is ... *under an ethical obligation to refuse to prosecute a frivolous appeal*"; when faced with filing a frivolous appeal, appointed counsel has a "duty to withdraw") (emphasis added).

In my view, we should remand this case to the court of appeals, with instructions to respondent parents' counsel to determine the status of this case under the standards articulated above. If counsel believe that an argument consistent with Colo. RPC 3.1 standards can be made in support of the appeal, they should proceed. If counsel, however,

conclude that the appeal cannot be supported by an argument that meets Colo. RPC 3.1 standards, they should again seek to withdraw.[1]

Despite the fact that an attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal," *McCoy*, 486 U.S. at 436, 108 S.Ct. 1895, the majority mandates that the lawyers in this case—and in all cases involving court-appointed attorneys, including criminal appeals, maj. op. at 1064—go forward with the appeals, however frivolous they may be. Indeed, "[w]here neither law nor facts can be framed in support of her indigent client"—that is, where an appeal is wholly frivolous—the court should "not allow the appointed attorney to withdraw from representation. . . ." *Id.* at 1058, 1061; *see id.* at 1059 (in such a situation, the attorney is "require[ed] . . . to present her client's case"); *id.* at 1061 (attorney "must present those issues her client wishes to be addressed," even if wholly frivolous). Instead, if the lawyer's "conscientious and sensitive efforts to locate viable issues" fail, she must proceed with the appeal, "honestly represent[ing] her client's impressions of injustice" as well as "her client's desire to prevail." *Id.* at 1060, 1060–61; *see also id.* at 1060 (requiring the "sensitive and compassionate representation of her client's best arguments," even if frivolous). In my view, regardless of how "honest," "conscientious," "sensitive," and "compassionate" the lawyer might be, she is still being put in the untenable position of making frivolous arguments to the court.

The majority seems to believe that respondent parents' counsel must continue the representation despite the frivolous nature of the appeal because "the client's rights to an appeal and to appellate counsel are protected by law." Maj. op. at 1061. Yet, as the United States Supreme Court has made clear, the right to counsel "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith v. Robbins*, 528 U.S. 259, 278, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). As the *Smith* Court continued, "[a]lthough an indigent whose appeal is frivolous has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments." *Id.* at 278 n. 10, 120 S.Ct. 746. If that zealous evaluation yields only frivolous arguments, however, counsel should be permitted to seek to withdraw.

In addition, the majority cites *McClendon v. People*, 174 Colo. 7, 481 P.2d 715 (1971), and the ABA Standards on Criminal Justice that it adopts, in support of its position. Maj. op. at 1058–59 (noting that Colorado has adopted an approach that "renders unnecessary the cumbersome procedure outlined in [*Anders* ]"). Yet there is nothing in *McClendon* or the ABA Standards that suggests that an appointed attorney is relieved of her ethical obligation to refuse to proceed with a frivolous appeal. On the contrary, *McClendon* begins by stating that the ABA Standards "g[i]ve full recognition to the points raised in *Anders* . . . and at the same time define[ ] the obligations of defense counsel in representing a defendant on appeal when the case is without merit." 174 Colo. at 12, 481 P.2d at 718.[2] The ABA Standards reiterate that there is a distinction between a case that lacks merit and one that is wholly frivolous, remind counsel that she need only make a good faith argument for the extension of law to support her client's position, and encourage counsel to remain on the case if at all possible. *ABA Standards for Criminal Justice: Criminal Appeals* § 21–3.2(b) (3d ed.1993); *ABA Standards for Criminal Justice: Prosecution Function & Def. Function* § 4–8.3 (3d ed.1993). As *McClendon* noted,

---

1. The withdrawal motion would be accompanied by an *Anders* brief or other filing that meets constitutional requirements. *See generally Smith v. Robbins*, 528 U.S. 259, 273–76, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (holding that *Anders* is a prophylactic measure and that states may adopt alternative approaches as long as those approaches meet constitutional standards).

2. The *McClendon* opinion was authored by Colorado Supreme Court Justice William Erickson, who at the time chaired the ABA Criminal Law Section and also served on the ABA Committee to implement the ABA standards. *See* Hon. William H. Erickson, *The ABA Standards for Criminal Justice*, Appendix A at n.* and n. 192 (Matthew Bender 1972).

"it is better for counsel to present the case, so long as his advocacy does not involve deception or misleading of the court." 174 Colo. at 12, 481 P.2d at 718 (quoting standards). But notably *McClendon* does not except appointed attorneys from the obligations of Colo. RPC 3.1, nor do the ABA Model Rules of Professional Conduct. *See ABA Model Rules of Prof'l Conduct R.* 3.1 (2009); *see also ABA Standards for Criminal Justice: Prosecution Function & Def. Function* § 4–8.3 cmt., p. 241 (3d ed. 1993) ("*In an appeal that is not entirely frivolous in counsel's estimate,* the problem may arise of the appellant's insisting upon including in the appeal a point despite counsel's protest that it is frivolous.... In this situation, it is proper for the lawyer to brief and argue only the points he or she believes are supportable ....") (emphasis added). *Compare State v. Cigic,* 138 N.H. 313, 639 A.2d 251, 254 (1994) (requiring appointed attorney to proceed with frivolous appeal and making an exception to state's analog to Colo. RPC 3.1). And as we noted most recently in *Breaman,* if an appointed attorney determines that an appeal is "wholly frivolous," she must seek to withdraw. 939 P.2d at 1351 n. 2;[3] *see also* C.A.R. 38(d) (permitting appellate courts to sanction "frivolous" appeals).

Finally, the majority concludes that its approach "best protect[s]" the interests of respondent parents. Maj. op. at 1062. Yet it is difficult to see how this could be so. According to the majority, an appointed attorney—who, after today's opinion, must proceed with a frivolous appeal—should "describ[e] the facts of the case," "direct[ ] the appellate court to the controlling law that should direct its review," "present[ ] the issues her client wishes to be considered," and ultimately convey her "client's desire to prevail." Maj. op. at 1060, 1061. The majority's "my client would like to prevail" approach, however, bears little resemblance to the "zealous" advocacy envisioned by the Colorado Rules of Professional Conduct.

*See* Colo. RPC pmbl. 2, 9. The majority admits as much, stating that the sort of "advocacy" that it proposes may "differ only slightly from a so-called *Anders* brief." Maj. op. at 1061. But there is an important difference between the withdrawal remedy recognized in *Anders* (and *Breaman* ) and the "my client would like to prevail" approach adopted by the majority. Under *Anders* and *Breaman,* the attorney is no longer in the position of acting as an advocate on behalf of her client, as she has sought to withdraw. In contrast, under the majority's proposal, the attorney continues to serve as an advocate while—to use the majority's own phrase—simply "directing the appellate court to the controlling law that should direct its review." *Id.* I fear that the majority's proposal comes perilously close to the sort of "friend of the court" role condemned in both *Anders* and *Breaman. See Anders,* 386 U.S. at 744, 87 S.Ct. 1396 ("The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae."); *Breaman,* 939 P.2d at 1352 (appointed attorney must represent client, not "serve as the court's fact-finder"); maj. op. at 1064 (respondent parent's counsel must act as "an advocate in fact as well as name").

The majority's "my client would like to prevail" approach places the appointed attorney in the untenable position of making wholly frivolous arguments, and provides little corresponding benefit for the respondent parent whose wishes to prevail are expressed by counsel to the court. Moreover, the approach—by requiring appointed counsel for indigent respondent parents to proceed with wholly frivolous appeals and by redefining what it means to provide zealous advocacy in that context—marks a significant step in the slippery slope toward a two-tiered ethical code that differs according to whether the client is indigent or not. In my view, this is a

**3.** The majority cites *Breaman* affirmatively for two propositions, *see* maj. op. at 1058, 1062–63, but then goes to great lengths to discount the case, noting, among other things, that it dealt with post-conviction proceedings. Maj. op. at 1062. While it is true that *Breaman* concluded

that an *Anders*-style brief would not be required in a post-conviction setting, the case plainly states that an attorney must seek to withdraw from a representation if she determines that her arguments are wholly frivolous. 939 P.2d at 1351 n. 2.

path down which we do not want to travel. I therefore respectfully dissent from the majority's opinion.

I am authorized to say that Justice RICE joins in this dissent.