25CA1993 Peo in Interest of DMR 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1993
City and County of Denver Juvenile Court No. 22JV30544
Honorable Lisa Gomez, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.M.R., Child-Appellant,

and Concerning K.S.R.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Miko Brown, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Counsel for Youth, Superior, Colorado, for Child-Appellant D.M.R.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant K.S.R.

¶ 1     K.S.R. (father) and D.M.R. (the child)[1] appeal the judgment terminating the parent-child legal relationship between them.  We affirm.

## I.     Background

¶ 2     In August 2022, the Denver Department of Human Services (the Department) received a report that mother had been involved in a domestic violence incident with her boyfriend and that the couple were smoking methamphetamine in the home.  The Department removed the child, placed her with father, and filed a petition in dependency or neglect.  Father made a no-fault admission and agreed to a deferred adjudication under section 19-3-505(5), C.R.S. 2025.

¶ 3     In January 2023, the Department placed the child in maternal aunt's care because father did not have the financial resources to care for the child at that time.  Over the next two years, the parties

---

[1] The child appeals through counsel for youth (CFY).  But the child turned twelve years old *after* the termination judgment entered. Even though she is now represented by a CFY and refers to herself as a "youth," we refer to her as a "child."  *Compare* § 19-3-203(2), C.R.S. 2025 (requiring the juvenile court to appoint counsel for youth twelve years and over), *with* § 19-1-203(1) (requiring the court to appoint a guardian ad litem for a child who is under twelve years of age).

discussed an allocation of parental responsibilities (APR) to maternal aunt through the Relative Guardianship Assistance Program (Program). *See* § 26-5-110, C.R.S. 2025. By the end of 2024, maternal aunt reported that she no longer wished to participate in an APR because (1) the child would lose her Medicaid coverage under the Program agreement and (2) maternal aunt could not claim the child on her taxes if she applied for Medicaid separately.

¶ 4 The juvenile court revoked the deferred adjudication in August 2023, adjudicating the child dependent and neglected, and adopted a formal treatment plan for father. About a year and a half later, the Department moved to terminate father's parental rights. The juvenile court held an evidentiary hearing in August 2025. After hearing the evidence, the court terminated the parent-child legal relationship between father and the child. The court then signed a form order submitted by the Department, which purported to terminate parental rights under both section 19-3-604(1)(a) and (1)(c), C.R.S. 2025.

## II.     Abandonment

¶ 5     Father and the child assert that the juvenile court erred by terminating their parent-child legal relationship under section 19-3-604(1)(a).  We agree but conclude that any error is harmless.

### A.     Standard of Review and Applicable Law

¶ 6     Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.  We set aside a court's termination order only "when the court's findings do not conform to statutory criteria and we cannot determine the basis for the court's order of termination."  *People in Interest of T.L.B.*, 148 P.3d 450, 457 (Colo. App. 2006).

¶ 7     Section 19-3-604 sets forth three separate grounds for terminating parental rights, two of which are pertinent in this case. First, under subsection (1)(a), a juvenile court may terminate parental rights when the parent has abandoned the child.  Second, under subsection (1)(c), a court may terminate parental rights if the parent did not successfully comply with a treatment plan, is unfit, and cannot become fit within a reasonable time.  The statute

permits the court to terminate parental rights on more than one statutory criterion, but termination requires the Department to prove only one. *See People in Interest of D.C-M.S.*, 111 P.3d 559, 561 (Colo. App. 2005); *see also* § 19-3-604(1) (stating that a court may order termination on "any one" of the criteria in subsections (a)-(c)).

## B.    Analysis

¶ 8      The Department's termination motion did not allege that father's parental rights should be terminated under subsection (1)(a). To be sure, the motion listed all three criteria for termination, but the supporting factual allegations related only to whether father had complied with his treatment plan, was unfit, and could become fit in a reasonable time. Notably, nothing in the motion suggested that father had (1) "surrendered physical custody of the child for a period of six months or more" and (2) failed to "manifest[] during such period the firm intention to resume physical custody of the child or to make permanent legal arrangements." § 19-3-604(1)(a)(I); *see People in Interest of M.H.*, 683 P.2d 807, 809 (Colo. App. 1984) (noting that the allegations in the motion must put the parent on notice of the grounds for termination).

¶ 9    At the termination hearing, the Department never suggested that it intended to seek termination under subsection (1)(a). Specifically, the Department did not present any evidence related to abandonment but focused on whether father had failed to comply with his treatment plan, was unfit, and could become fit within a reasonable time.  Likewise, the county attorney never asserted in closing argument that father had abandoned the child or that termination was appropriate under subsection (1)(a); the closing argument focused only on the subsection (1)(c) criteria.

¶ 10    The juvenile court's oral findings likewise did not address subsection (1)(a).  Indeed, the court never suggested that father intended to abandon the child in this case; rather, the court's findings tracked the statutory criteria in subsection (1)(c). Following the evidentiary hearing, however, the Department submitted a form order for the court's signature, which stated that father had "surrendered physical custody of the child for a period of six months or more" and had "not manifested during such period the firm intention to resume physical custody of the child."  § 19-3-604(1)(a)(I).  The court signed the form order without making any changes.

¶ 11    On appeal, the Department acknowledges that it did not include any specific allegations supporting termination under subsection (1)(a) in its termination motion and that the juvenile court made no specific oral findings suggesting that it intended to terminate parental rights under subsection (1)(a).  Still, the Department attempts to defend termination under subsection (1)(a) by trying to make the evidence fit into the subsection (1)(a) criterion.  We are not persuaded.  Based on the foregoing information, we can reach only one conclusion: the Department inadvertently included the subsection (1)(a) criterion in its form order, and the court did not recognize this mistake before signing the order.

¶ 12    Therefore, we conclude that the juvenile court erred by terminating the parent-child legal relationship between father and the child under subsection (1)(a).  That said, we conclude that any error is harmless because section 19-3-604(1) requires that the Department prove only one of the criteria, and no one challenges the court's explicit findings under section 19-3-604(1)(c), and as discussed below, we reject the challenge to the court's less drastic alternatives determination.  *See* C.A.R. 35(c) ("The appellate court

6

may disregard any error or defect not affecting the substantial rights of the parties."); *see also D.C-M.S.*, 111 P.3d at 561 (noting that the termination statute "permits termination so long as at least one of the statutory grounds has been established by clear and convincing evidence").

### III.   Less Drastic Alternatives

¶ 13    Father asserts that the juvenile court erred by finding that there was no less drastic alternative to termination.  We disagree.

### A.   Standard of Review and Applicable Law

¶ 14    We must affirm the juvenile court's findings on less drastic alternatives if they are supported by the record.  *See People in Interest of B.H.*, 2021 CO 39, ¶ 81.

¶ 15    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives.  *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3).

¶ 16    A viable less drastic alternative must do more than adequately meet a child's needs; rather, it must be in the child's best interests.

*A.M.*, ¶ 27.  Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination.  *Id.* at ¶ 32.

## B.    Analysis

¶ 17     Recall that the child was placed with her maternal aunt in January 2023.  Both caseworkers who testified at the termination hearing said that the Department did not have any safety concerns with maternal aunt and that maternal aunt had provided for all the child's needs.  The second caseworker explained that maternal aunt had been open to an APR with father but ultimately rejected an APR for the reasons described above.  The second caseworker said that she agreed with maternal aunt's decision because it was "extremely important" that the child have Medicaid for access to individual therapy.  The second caseworker also opined that termination and adoption were in the child's best interests because it would "guarantee her stability, consistency, and safety."

¶ 18     Based on this evidence, the juvenile court determined that there was no less drastic alternative to termination.  In doing so, the court recognized that an "APR was, at some point in this case, a

viable" alternative to termination but that an APR to maternal aunt was no longer an option because the child's "needs . . . must come first." Specifically, the court determined that the child's "need for Medicaid" and her "need to be in a safe, stable, loving place" were "paramount" in the decision to reject an APR and enter termination.

¶ 19 Father asserts that the juvenile court erred by rejecting an APR to maternal aunt because the evidence established that father and the child had "a loving and positive relationship," and even though an APR would present "financial challenges" for maternal aunt, it was still in the child's best interests to preserve her legal relationship with father. We are not persuaded for three reasons.

¶ 20 First, contrary to father's argument, the juvenile court found with record support that father did not make sufficient efforts to build and maintain a relationship with the child. *See People in Interest of A.R.*, 2012 COA 195M, ¶ 37 (noting that a court may consider whether an ongoing relationship with the parent would benefit the child in considering the viability of a less drastic alternative). The record shows that father had, at most, two in-person visits with the child in over a year leading up to the termination hearing. And although father would talk to the child on

the phone about every two weeks, the evidence established that the child had to reach out to father to initiate this contact. The court found that "[a] sporadic phone call . . . is not the level of parenting that [the child] needs in her life."

¶ 21 Second, even if the evidence did support father's position, the benefit of an ongoing relationship with a parent is but one factor that a court may consider when deciding if a less drastic alternative is viable. *See id.* In this case, the court considered and rejected an APR because (1) maternal aunt could not provide for the child's needs under an APR, *see People in Interest of D.L.C.*, 70 P.3d 584, 589 (Colo. App. 2003) (rejecting an APR to a relative based on financial considerations); and (2) an APR did not provide the child with adequate permanency, *see People in Interest of Z.M.*, 2020 COA 3M, ¶ 30 (stating that an APR is not a less drastic alternative "if the child needs a stable, permanent home that can only be assured by adoption"). Because the record supports those reasons, as described above, we cannot disturb the court's decision. *See B.H.*, ¶ 80; *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29 (noting that an appellate court may not reweigh the evidence or substitute its judgment for that of the juvenile court).

¶ 22    Finally, regardless of whether an ongoing relationship with father would be beneficial to the child, father does not explain how the juvenile court could have forced maternal aunt to accept an APR. *See People in Interest of P.D.*, 580 P.2d 836, 838 (Colo. App. 1978) (noting that a court cannot enter an APR to an unwilling party who is not the child's parent); *see also People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011) (permitting the court to consider a placement's preference for adoption over an APR). And father does not suggest different relatives that would have accepted an APR. *See People in Interest of Z.P.*, 167 P.3d 211, 215 (Colo. App. 2007) (noting that a department has no obligation to consider relatives for placement unless the parent identifies the person as a placement option).

IV.    Juvenile Court's Duty to Ascertain a Child's Position

¶ 23    The child asserts that the juvenile court erred by failing to (1) consult with her about her permanency goals and (2) ascertain her position with respect to termination. She maintains that, as a result, the court violated her due process rights to a fair proceeding. We are not persuaded.

11

## A. Preservation

To begin, the child acknowledges that she did not raise this issue in the juvenile court. On that basis, the Department asserts that we should decline to address her argument. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 ("[D]ependency and neglect proceedings are subject to the limitation that except where jurisdiction is implicated, generally appellate courts review only issues presented to and ruled on by the lower court."). In response, the child maintains that we may address her appellate contention under the miscarriage of justice exception to the preservation rule. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14 (applying the miscarriage of justice exception to consider whether the juvenile court erred by allowing a blanket policy barring visitation). We agree with the child that, under the circumstances presented here, it would have been difficult, if not impossible, for her to properly preserve this issue. We therefore exercise our discretion to consider the child's challenge.

## B. Standard of Review and Applicable Law

We review procedural due process claims de novo. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 26. But a party cannot prevail on

12

a due process claim absent a showing of harm or prejudice. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007).

## C.    Analysis

¶ 26    We are not aware of any case law describing a child's due process rights in a dependency or neglect case, and the child has not directed us to any. We therefore begin by discussing the due process protections afforded to parents facing termination.

¶ 27    Generally, "[p]arents have a constitutionally protected liberty interest in the care, custody, and management of their children," *A.M.*, ¶ 17, and therefore the termination of the parent-child legal relationship must satisfy due process by providing fundamentally fair procedures, *People in Interest of J.G.*, 2016 CO 39, ¶ 20. To provide fundamentally fair procedures, a parent must be provided with (1) notice of the allegations in the termination motion, (2) the opportunity to be heard, (3) the opportunity to have counsel if indigent, and (4) the opportunity to call witnesses and engage in cross examination. *People in Interest of E.B.*, 2022 CO 55, ¶ 16.

¶ 28    Within the last few years, the General Assembly passed legislation intended to provide a "voice" to children involved in dependency or neglect cases. Ch. 92, sec. 1(1)(b), 2022 Colo. Sess.

13

Laws 430.  Among other things, this new legislation provides that "[a] child named in the petition shall be a party to the proceedings and have the right to attend and fully participate in all hearings related to the child's case." § 19-3-502(4.5), C.R.S. 2025.  The child is also entitled to "developmentally appropriate notice . . . of all hearings related to the child's case."  *Id.*

¶ 29    The new legislation also creates separate forms of representation for children under and over twelve years old.  Specifically, a child over the age of twelve is now represented by a CFY, "who provides specialized client-directed legal representation . . . and who owes the same duties, including undivided loyalty, confidentiality, and competent representation . . . as is due an adult client." § 19-1-103(41.5), C.R.S. 2025; *see also* § 19-3-203(2), C.R.S. 2025 (describing appointment of a CFY for a child over twelve years old).  In contrast, a child under the age of twelve is not entitled to client-directed counsel; rather, the child's best interests are represented by a guardian ad litem (GAL).  *See* § 19-3-203(1), (5).

¶ 30    As we noted above, the child was under twelve years old for the duration of the juvenile court proceedings.  After father

14

appealed the termination judgment, the child turned twelve and was entitled to a CFY on appeal. But because the child was under twelve during the termination proceedings, she was only entitled to the protections afforded to a child under the age of twelve. In other words, although the Colorado Children's Code now provides a child under twelve with similar protections to those afforded a parent and a child over twelve (i.e., notice, opportunity to be heard, appointment of counsel, and ability to call witnesses and engage in cross examination), those protections are limited by the nature of a GAL's representation. *See, e.g.*, § 19-3-203(5) (directing a GAL to call witnesses to represent the child's best interests); § 19-3-502(4.5) (requiring a GAL to provide notice of hearings in a "developmentally appropriate" manner).

¶ 31     Nonetheless, the child first asserts that the juvenile court erred by failing to consult with her about her permanency preference at the permanency planning hearings. She directs our attention to section 19-3-702(1)(a), C.R.S. 2025, which provides that "[t]he court shall consult with the child . . . in a developmentally appropriate manner regarding the child's . . . permanency goal" at each permanency planning hearing. The child

15

acknowledges that she did not appear at five of the six permanency hearings, and we cannot discern how the court could have "consult[ed]" with her under those circumstances. As for the sixth permanency hearing, which occurred after the termination hearing's conclusion, we discern no reversible error in the court's failure to consult with the child, considering that the only permanency option at that point was adoption by a relative. *See* § 19-3-702(4)(a) (listing the different permanency options).

¶ 32    The child next maintains that the juvenile court should have attempted to ascertain her position at the termination hearing. But the child has not directed us to any specific authority — and we are not aware of any — requiring the court to directly ask a child about her position on termination. If the child wanted to express a position counter to her GAL, we presume that the GAL would have called her as a witness, *see* § 19-3-203(5), or requested an in-camera hearing with the judge, *see People in Interest of H.K.W.*, 2017 COA 70, ¶ 17 (concluding that section 19-1-106, C.R.S. 2025, permits in-camera interviews of children in dependency or neglect cases). And although the court may call witnesses in its discretion, CRE 614(a), we see nothing in the record surrounding the

16

termination hearing that would have suggested to the judge that the child wanted to state a position contrary to her GAL.

¶ 33    The child also argues that her GAL should have at least stated her position at the termination hearing, as required by Chief Justice Directive 04-06, Court Appointments Through the Office of the Child's Representative (effective Jan. 2023) (CJD 04-06).  As relevant here, this CJD requires the GAL to "[s]tate the child's position, when ascertainable," unless the child informs the GAL not to do so, and in that case, "the GAL may proceed without directly stating such position."  CJD 04-06(V)(D)(1)(a)(i).  Based on the record before us, we cannot say for certain whether the GAL failed to state the child's position, the GAL could not ascertain her position, or the child asked the GAL to not state her position.  In effect, the child's argument would require us to determine that the GAL provided something akin to ineffective assistance of counsel by failing to state her position, or worse, by misleading the court about her wishes.  But the child does not allege facts suggesting ineffective assistance of counsel, and we are unaware of any authority that would allow a child to challenge a termination judgment based on the ineffective assistance of a GAL.

17

¶ 34    In sum, because the child has not demonstrated a due process violation, we discern no basis for reversal.  Regardless, we are not convinced that the child has established any harm or prejudice from any putative due process violation.  *See J.A.S.*, 160 P.3d at 262.  Even if the juvenile court had information that the child opposed termination, the record indicates that the juvenile court would have still terminated the parent-child legal relationship between father and the child, considering that (1) it is undisputed that the Department proved the termination criteria in section 19-3-604(1)(c) by clear and convincing evidence; (2) there were no less drastic alternatives available to the court; and (3) the GAL believed that termination was in the child's best interests.

## V.    Conclusion

¶ 35    The judgment is affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.